[Civ. No. 6585. Second Appellate District, Division One.—July 10, 1931.]

HARRY ROGAFF, Respondent, v. LILLIAN M. BARTLES, Appellant.

D. H. Laubersheimer and Leland S. Bower for Appellant.

L. A. Bloom and Robert I. Kronick for Respondent.

HOUSER, J.—On terms and conditions set forth in a contract entered into between plaintiff and defendant, it was agreed that plaintiff would buy from defendant and defendant would sell to plaintiff a certain lot or parcel of land. Among the conditions which were stated in the contract were "Lot is B Zone. No setback, no fill, and no restrictions

against building a four-story apartment house." In connection with such transaction, following the delivery to plaintiff of a deed of the property and the commencement by him of the construction of a four-story apartment house thereon, in the course of the excavation for the foundation for said building it was discovered that the lot had been filled; which fact induced the outlay by plaintiff of a considerable sum of money in payment of labor and materials for the increased depth of excavation for foundation, brick and cement walls, etc. Thereafter, "relying upon the terms and conditions of the aforesaid agreement", plaintiff brought an action for damages against defendant. Preliminary to the rendition of a judgment in favor of plaintiff, from which defendant appeals to this court, in substance the trial court made its finding of fact that the following allegations of the complaint were true, to wit:

"That thereafter, relying upon the terms and conditions of the aforesaid agreement, plaintiff commenced building operations for the erection of a four-story apartment house building; that during the course of the excavation for the foundation for said building it was ascertained that the ground on said lot was filled; that by reason of said filled ground plaintiff has suffered damages in the sum of three thousand seven hundred and fifteen dollars, forty cents ($3,715.40), being the amount expended by him for additional excavating and concrete necessary to build a foundation for aforesaid building, over and above the amount required for the usual and ordinary foundation necessary for the aforesaid building, owing to the fact that plaintiff was forced to make much deeper excavations to reach solid ground and which said deeper excavation and foundation were ordered by the Building Department of the City of Los Angeles."

On the trial of the action, over the objection of defendant, evidence was introduced which showed the amount of money expended by plaintiff in making extra excavations, constructing walls, etc., made necessary in the construction of the building by reason of the greater required depth of such excavations on account of the upper part of the soil on the property in question having been filled. And such evidence furnishes the sole support for the finding by the trial court as to the damages suffered by plaintiff.

One of the reasons urged by appellant for a reversal of the judgment herein is that in attempting to fix the amount of damages which plaintiff was entitled to recover against defendant, the trial court erroneously applied the rule set forth in section 3300 of the Civil Code to the effect that for the breach of an obligation arising from contract, the measure of damages "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom". In that connection it is the contention of appellant that in circumstances such as are presented by the facts herein, the true rule for the admeasurement of damages to the injured party is that he is entitled to recover a judgment only for the difference between the actual value of the property and the value which it would have had if the representations regarding the property had been true.

Although in the instant case it is possible that, considering the use to which the property here in question was put, the method adopted by the trial court for the ascertainment of the damage which resulted to the vendee would be a fairer method than that prescribed by the rule for which appellant contends, it is manifest that the safer rule and the one which would oftener result in justice to an aggrieved vendee would be that to which appellant has directed attention. It is clear that the defendant herein was placed on notice that at least one of the anticipated uses to which the property might be put was a site for the construction thereon of a four-story apartment house. However, by the terms of the contract, no provision is made for the type of such contemplated building. For aught that appears, it might have been either a frame, a brick, or a stone building, or even a building composed of steel and cement; and if the construction were of either of the last three mentioned kinds of buildings, it is probable that the depth of the necessary excavation and the thickness of the walls of the building would materially differ from the depth and width of excavation necessary for the construction of a frame building, with a resultant difference in the matter of original cost to the vendee, which in turn would be transferred to the vendor. Nor, even in the construction of a brick building, which apparently was the type selected by the vendee

herein, was any restriction placed upon him regarding the thickness of the walls of the foundation to be used. He may have been content to follow the bare requirements prescribed by law, or by city ordinance; but such a wall might have appeared to him to be too frail or unsubstantial, with the result that in constructing his four-story apartment house he might have built a foundation so strong and so secure that if put to the test it would have supported a much taller building. In such circumstances, the question well might be pertinent as to whether the vendor should be held liable for such increased cost. On the other hand, had the vendee constructed a height-limit building of twelve or thirteen stories on the property here under consideration, the question regarding the amount of damage which he had suffered by reason of a false representation as to "no fill" might have been more difficult to solve. As an illustration of consequences which might result from the application of the rule of damages which was adopted by the trial court, let it be supposed that a man purchased a tract of land which was represented to him by the vendor as especially suited to the growth and production of walnuts, and particularly that the natural soil of the land was at least twenty feet deep—"no rock"; and let it be further supposed that immediately after the vendee commenced to set out his walnut trees on the land he discovered bedrock at a uniform depth of six inches below the surface of the soil: Would it be reasonable that the vendee be permitted to blast out the rock to a depth of nineteen and one-half feet, remove same from the land, substitute therefor a soil suitable to the growth and production of walnuts, and that the cost of such operations should be the measure of damages?

In the case of *Hines* v. *Brode,* 168 Cal. 507, 511 [143 Pac. 729, 731], the nature of the cause of action which may be maintained by a person situated as is plaintiff in the instant case is discussed. In part, it is there said: " . . . The consummation of a fraud may arise in a contract executed or executory. But in either case the right of action immediately exists. This is so, because even in the case of an executory contract *the action for fraud is not upon the contract, but is collateral to the contract and is on the case.* (Citing authorities.) But while such an action for deceit

is not upon the contract, nevertheless it grows out of and in that sense is founded on the contractual relations between the parties. . . . '' In that case the conclusion reached was that in an action for fraudulent representation as to the character of land conveyed, the measure of damages is the difference between the actual value of the property and its value had the property been as represented.

In *Spreckels* v. *Gorrill,* 152 Cal. 383, 390 [92 Pac. 1011, 1015], it is declared that ''the real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition''.

And in *Wood* v. *Niemeyer,* 185 Cal. 526, 532 [197 Pac. 795, 798], the statement is made that in actions for deceit in the sale of real estate, the settled rule of law in this state is that the party defrauded is ''entitled to recover the difference between the actual value of the property which he received and the value which it would have had if the . . . representations as to the value thereof had been true''. (Citing authorities.) To the same effect, see *Wellnitz* v. *Sacramento Suburban F. L. Co.,* 97 Cal. App. 51 [274 Pac. 1016, 276 Pac. 154].

Reasoning from the principle announced in the authorities to which attention has been directed, it would follow that in the instant action defendant was prejudiced in her substantial rights by the method used by the trial court in estimating the damages to which plaintiff was entitled.

It becomes unnecessary to devote attention to any of the remaining specifications of error presented in the brief of appellant.

The judgment is reversed.

Conrey, P. J., and York, J., concurred.