[Civ. No. 7420. Second Appellate District, Division One.—October 10, 1932.]

FRED KRETZSCHMAR et al., Respondents, v. JANSS INVESTMENT COMPANY (a Corporation) et al., Appellants.

Gibson, Dunn & Crutcher, Paul Watkins and Keith Bullitt for Appellants.

Maynard J. Givens for Respondents.

TAPPAAN, J., *pro tem.*—The judgment, from which this appeal is taken, gave to respondents the sum of $1750, and provided that appellants take nothing by their cross-complaint.

The action as instituted by respondents was one for fraud. The appellants filed an answer to respondents' complaint and also a cross-complaint by which they sought to quiet title, as against respondents, to the lot or parcel of land involved in the cause of action as alleged by respondents in their complaint. The various transactions had by appellants in reference to the real property here involved were had with respondent Josie Kretzschmar. It would appear that her husband, Fred Kretzschmar, was joined in the proceeding merely by reason of his marital relationship.

The facts from which this controversy arose present but few conflicts of evidence and are as to most of the material

issues undisputed. The evidence introduced at the trial was in large part documentary. Respondent Josie Kretzschmar on February 14, 1924, entered into a written *option* to purchase from appellants a certain lot or parcel of real property for the sum of $2,500 upon terms in said option specified. This instrument contained the following clauses: "It is understood that the Janss Investment Co. will reserve the right to grade or fill said property, and to construct street improvements, rights of way for public utilities, drainage, etc., right to impose such reasonable building restrictions and use restrictions on the respective lots of said tract as it may in its judgment deem most beneficial to such lots; that the property described in this option will be sold only subject to such restrictions and reservations and *also to any rights of way or other easements now of record."* (Italics ours.) It appears from the record here that the lot upon which this option was given was much lower than the other lots in the same tract and that running across it there was a so-called *wash* where flood waters from lands above it at times flowed. It also appears that the price named in the option was less than that of the other lots in the tract. Appellant desired to purchase the lot with the view of making use of it as a garden and later placed there improvements useful for that purpose. Respondent Josie Kretzschmar testified: "The only representations which the agents of Janss Investment Company or any of its representatives made regarding this property other than what was contained in the written instrument itself was that we could put any building on there except a dairy or pig farm."

On April 22, 1924, appellants dedicated to the Los Angeles County Flood Control a strip of land through the lot upon which respondent held the above referred to option, and on the same day such dedication was duly recorded in the office of the county recorder of Los Angeles County. There is nothing in the record to show that respondents knew of this contemplated dedication nor that they knew that a work of the kind which was thereafter constructed upon this easement was to be placed upon the lot, until the time that it was actually constructed, some two years later.

The next day after the dedication above referred to, the parties to the option made and entered into a formal con-

tract of sale for the lot in question. This contract contained the following paragraphs which are pertinent to this inquiry: "The buyer shall have immediate possession of said property . . . provided the buyer shall faithfully perform each and every obligation herein undertaken by him, . . . the seller shall deliver to the buyer . . . a deed of grant for said property, together with a certificate of title . . . showing the title to said property to be vested in the grantor named in said deed, free and clear of incumbrances, except the conditions, restrictions and reservations herein described . . . 5. A perpetual easement is hereby reserved to the seller and its successors and assigns, in and over said real property, for the construction, maintenance and operation therein or thereon of drainage pipes or conduits and pipes, conduits, poles, wires and other means of conveying to and from lots in said tract gas, electricity, power, water, telephone and telegraph service, sewage and other things of convenience to the owners of lots in said tract." The lot agreed to be sold to respondents was described in this contract as "Lot number 11, . . . according to a map of said tract filed for record in Map Book 93 at pages 12, 13 of the records of said county." This map so referred to was the one that dedicated the right of way or easement to the Los Angeles County Flood Control and was placed of record the day before the contract was signed. The contract also contained the following clause: "The buyer hereby certifies that he has personally inspected the property herein described, has examined and checked map of same and knows that this property is the identical property he selected and purchased."

Respondents entered upon the lot so agreed to be sold and expended in the improvement thereof for the purpose of gardening thereon the sum of $2,000 before they had actual notice of the dedication of the easement to the Flood Control. Some two years after respondents went into possession of the lot in question the Flood Control entered upon the lot and constructed across it, upon the easement granted by appellants, a storm drain. This easement as granted had a width of 75 feet and there is evidence that in parts of its length through the lot that earth had been taken from the ditch and placed along the easement so that the space occu-

pied was 100 or more feet across. The right of way had erected along it a wire fence some five or six feet in height. These works so erected cut the lot into two parts, leaving the improvements erected by respondents upon one part, and this part completely cut off from the other part of the lot, by the ditch, banks of earth and two wire fences.

Appellants' first contention is that "The right to create the drainage easement was specifically reserved in both the written option and the written contract." This contention is based upon certain parts of the clauses of the option and contract of sale hereinbefore quoted. In the option there is a reservation of "rights of way for public utilities, drainage, etc.", while in the contract of sale the following is found: "A perpetual easement is hereby reserved to the Seller . . . for the construction, maintenance and operation therein or thereon of drainage pipes or conduits. . . . " It will be noted that the words just quoted from the option are but a part of the general clause covering the right of the grantor of the option to improve the tract of which the lot in question was a part, and that read in conjunction with the rest of the paragraph would not convey to the general reader the thought that a work of the scope and magnitude of the Flood Control ditch was to be constructed, but rather that it had reference to improvements contemplated by the appellants in their development of the tract. There is no evidence in the record that appellants at any time told respondents of this proposed improvement to be constructed by a public agency nor that respondents were informed or knew that such a work was contemplated; one that would take the major part of the lot that they were about to purchase, and render inaccessible the larger part of the remaining portion thereof.

The contract of sale which respondents accepted referred to the map upon which the easement was shown, but there is no evidence that respondents ever saw this map nor that their attention was ever called to it. This map was filed for record but a few hours before this contract was presented to respondents. It would seem that in common justice that appellants should have at this time by some act on their part directed respondents' attention to the material change that had been made in the lot by the dedication of this

easement. The contract reserved the right to construct drainage pipes and conduits upon the property. Appellants cite authorities to the effect that conduit may mean canal or ditch. This may be true in some cases when the surrounding circumstances justify the use of the word in its broadest sense, but here when read in connection with the contract as a whole, no such meaning can be attached to the term. The option, when entered into, defined the limits of the contractual relation of the parties, and respondents were justified in standing upon its terms. Respondents never consented to any change or modification of this option. The property covered by the option did materially change in character and appellants had knowledge of this change, but failed to call it to the attention of respondents and so deprived them of the right to withdraw from the purchase. The instant case is one where one is induced to enter into a contract by "the suppression of that which is true, by one having knowledge or belief of the fact". (Civ. Code, sec. 1572, subd. 3.) The instant case differs from those cases where a deed is given as the closing incident of a purchase of land and constitutes an expression of the terms of the agreement reached in the transaction by the parties. Here the contract, in so far as an agreement of the parties upon the subject matter had been reached, was evidenced by the option made some months before the contract of sale was delivered. The respondents were justified in relying upon this option and a duty rested upon the appellants to inform them of any material changes in the subject matter which had taken place subsequent to the option. (*Hargrove* v. *Henderson*, 108 Cal. App. 667 [292 Pac. 148].) In view of the fact that this case must be reversed upon another ground, further consideration of this phase of the case is deemed to be unnecessary here.

 Appellants attack the finding of the trial court as to the damages allowed respondents, contending that there is no evidence to sustain the finding of damages in the sum of $1750. The court's finding in this regard is as follows: "That it is true that the giving, granting, or dedicating of the easement or right of way to the Los Angeles County Flood Control by the defendants, to and over the plaintiff's property and the construction of the ditch thereon as aforesaid, has

damaged the plaintiffs' said real property hereinabove described and has and does now prevent the ingress and egress of plaintiffs and both of them to and from the easterly portion of their said real property and the building and improvements therein situated and that by reason thereof the plaintiffs have been damaged in the sum of $1,750.00, *the approximate cost of a bridge to cross the said easement or right-of-way on plaintiffs' property.*" (Italics ours.) The only testimony offered at the trial on the subject of damages is that of respondent Fred Kretzschmar. He testified to the fact of the erection of the barrier by the Flood Control and that he was thereby cut off from access to a part of the lot in question; to the value of the improvements placed upon the property; and that he could cross the wash from one part to the other before the Flood Control was erected. He testified: "I have had an estimate of $1,750.00 as the cost of a bridge across the ditch and two bids of $233.00 and $250.00 for leveling off the dirt on either side of the ditch. If I had a bridge across the ditch I could go back and forth but $1,750.00 would not completely eliminate my damage."

From the finding made by the court and from the evidence offered at the trial it is obvious that the measure of damages adopted by the court was confined solely to the cost of a bridge. There is no evidence as to the kind or character of the bridge or as to whether it was one reasonably necessary for the use required of it. There can be found in the record no evidence as to the detriment caused to the land involved by the structure complained of by respondents. The damages suffered must arise from the diminished value of the land by reason of the easement granted by appellants. The record here discloses no evidence upon this subject. "The real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition." (*Spreckels* v. *Gorrill,* 152 Cal. 383, 390 [92 Pac. 1011, 1015].) In the case of *Rogaff* v. *Bartles,* 115 Cal. App. 429 [1 Pac. (2d) 517], will be found a discussion on this subject, together with a collection of the authorities thereon.

Inasmuch as there is no evidence to support the finding on the subject of damages the cause must be reversed. From an examination of the record it appears that there was

offered at the trial evidence of a substantial nature to support the court's findings on the issues presented by the cross-complaint. The questions presented upon this phase of the case were largely as to matters of fact which are not the subject of review here.

The judgment appealed from is reversed for the reason herein stated.

Houser, Acting P. J., and York, J., concurred.