[Civ. No. 12311.   Second Dist., Div. One.—May 27, 1941.]

CHARLES ROTHSTEIN et al., Appellants, v. JANSS INVESTMENT CORPORATION (a Corporation) et al., Respondents.

L. G. Shelton for Appellants.

Gibson, Dunn & Crutcher and Keith Bullitt for Respondents.

DORAN, Acting P. J.—Plaintiffs appeal from a judgment in favor of defendants in an action for damages for fraud in inducing plaintiffs to enter into a contract for the purchase of real property. Plaintiffs, husband and wife, bought a lot in the neighborhood of Westwood Village from the two defendant corporations, through their agent, defendant Spradling. The property was purchased under an option agreement, which contained the following provision:

"I have personally inspected the above described property and have read this option. I understand its provisions and I am purchasing the property described therein subject to said provisions with the clear understanding that no salesman or agent of the optionor has any power to modify said option or to make any representations or promises not contained therein and that no agreement, understanding or representation orally made or written and not contained in said option or in the optionor's regular form of agreement for sale of real estate will be binding upon either myself or upon the optionor or its salesman or agents. Furthermore, I understand that neither the optionor nor its salesmen nor agents in any way promise or guarantee a resale."

In their complaint, plaintiffs allege that defendant Spradling, as agent, represented to plaintiffs that the real property was a solid lot and did not contain a fill; that plaintiffs relied thereon and were thereby induced to purchase the said property; that the representation was false and fraudulent; and known by Spradling to be so; and that subsequently, after plaintiffs had entered into a contract for the purpose of excavating the said lot and constructing a dwelling thereon, plaintiffs discovered that the lot in question contained a fill of some 19 feet. Later, by amendment, the following allegations were added to the complaint: "That the corporate defendants herein were well aware at the time said lot was sold to plaintiffs that said lot was a filled-in lot but said corporate defendants refrained and desisted from advising plaintiffs of such fact, and had they not done so, plaintiffs would not have purchased said property at the price paid said defendants therefor." The material allegations of the complaint, including the amendment, were denied by defendants.

At the trial plaintiffs offered to prove the cost to them of laying the foundation made necessary because of the fill, and, to quote from the transcript, "that this foundation had to be placed there because of the fill which was represented to this purchaser as not being there, and that the plaintiff relying upon representations of the defendant represented to his architect that he need not look at the property, that it was level and he could make his plans accordingly; and after he made the contract and after he started work, and after he started to dig the foundation that the plaintiffs learned of this fill for the first time; and then it was then too late at that

time to ask for a rescission.'' Objection to the offer was interposed upon the grounds, among others, that it was incompetent, irrelevant and immaterial and that it was contrary to the clause of the option agreement, above quoted. The objection was sustained.

It was stipulated at the trial that the defendants knew that the property in question was filled ground; but there was no stipulation as to the depth or extent of the fill. No other evidence was permitted, except the contract itself and an additional stipulation that Spradling was agent for the defendants.

■■■ Appellants contend that the trial court erred in refusing to permit the introduction of parol evidence to show that the contract was induced by fraud. Respondents concede that it is well settled law that evidence of fraudulent representations inducing the execution of a contract is generally admissible as an exception to the parol evidence rule (*Mooney* v. *Cyriacks,* 185 Cal. 70 [195 Pac. 922]) and that a party cannot contract against the effect of his own fraud (*Wedge* v. *Security-First Nat. Bank,* 219 Cal. 113 [25 Pac. (2d) 411]), but claim that such propositions are not applicable to the instant case, in that there is here presented an ''exception to the above mentioned exception'' to the parol evidence rule. Respondents contend that the sole question involved is whether a corporation seller, by expressly limiting in writing the authority of its agent to make representations and by notifying the buyer in writing accordingly, can protect itself against claims for damages based on alleged false representations by said agent which exceed said written limitation of authority; and respondents confine their argument principally to that one question, relying largely upon *Speck* v. *Wylie,* 1 Cal. (2d) 625 [36 Pac. (2d) 618, 95 A. L. R. 760], for an affirmative answer thereto.

It should be noted, however, that under the pleadings as framed by the amendment above quoted there was placed in issue the question of whether the contract had been induced by fraud, not only through representations the agent Spradling may have made, but also through the acts or conduct of the Janss Investment Co. itself and those of its allied defendant corporation. Moreover, under the pleadings, the major issue was whether there had been any fraud on the part of the Janss Co. and the other defendant corporation, inducing

plaintiffs to enter into the purchase of the property; and the question of whether the agent had misrepresented the property through fraudulent statements was only of minor or secondary importance. It must be emphasized that plaintiffs' complaint, as amended, was broad enough to include any fraudulent act or conduct on the part of the defendant corporations by which plaintiffs were deceived as to the filled condition of the real property under purchase. Furthermore, that portion of plaintiffs' offer of proof above quoted was sufficient to include either an express or implied representation. The language used did not limit plaintiffs to proof of an express representation, nor did it limit plaintiffs to proof only of representations made through an agent. If the Janss Co. under the circumstances was bound to disclose to plaintiffs the fact that the property was filled, and failed so to do, such failure would constitute actionable fraud (Civ. Code, sec. 1572, subd. 3), and deceit (Civ. Code, sec. 1710, subd. 3), and proof of such failure would be admissible as lying within the scope of the pleadings, and would be covered by plaintiffs' offer of proof, as a tacit representation that the property was not filled.

It then becomes necessary to determine whether, under the circumstances of this case, it was the duty of the Janss Investment Co., and its associates in the matter, to disclose to plaintiffs the filled condition of the property. When and where the action by the purchaser is based on conditions that are visible and that a personal inspection at once discloses and, when it is admitted that such personal inspection was in fact made, then manifestly it cannot be successfully contended that the purchaser relied upon any alleged misrepresentations with regard to such visible conditions. But personal inspection is no defense when and where the conditions are not visible and are known only to the seller, and ''where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee''. *Clauser* v. *Taylor*, 44 Cal. App. (2d) 453 [112 Pac. (2d) 661] (citing, among other authorities, *O'Shea* v. *Morris*, 112 Neb. 102 [198 N. W. 866, 867], and Restatement of the Law of Contracts (1932), vol. 2, p. 897, sec. 472, subd. b). The Clauser case holds directly that when a vendor sells real property, which he knows

has been filled and the value of which is materially affected by such filling, without disclosing to the vendee the fact that such property has been filled, and the vendee makes no inquiry relative to whether or not the property has been filled, the vendee may rescind the transaction upon learning the true facts. The action in that case was one for rescission, the action here is one for damages. ■ Either remedy is available to a vendee induced to purchase through fraud. It is well settled that where one is induced by deceit or fraud to enter into a contract, he may, upon discovery, either repudiate and rescind the contract, or he may allow the contract to stand and sue for damages. (See 12 Cal. Jur. 781, 782, and numerous authorities there cited.) It is apparent from the allegations and the offer of proof in the instant case that by the time plaintiffs discovered the true condition of the property they had proceeded so far with their plans and had so far obligated themselves that rescission would have afforded an inadequate remedy.

In the case of *O'Shea* v. *Morris, supra,* it was found that the plaintiff believed, and was reasonably led and induced to believe, by the character and location of the grounds and improvements, that defendants were the owners of all of the property in question; and, under the circumstances, it was there held that defendants were in duty bound to advise plaintiff that a certain driveway and garage were not entirely on defendants' property, and that the concealment of such a fact, and knowingly permitting plaintiff to believe that all of the house, driveway and garage were upon the property, was a fraud and deceit against the plaintiff.

In *Kretzschmar* v. *Janss Investment Co.* (1932), 126 Cal. App. 698 [14 Pac. (2d) 1069], the plaintiff entered into a written option with the Janss Co. for purchase of a certain piece of land for use as a garden. The option expressly stated that the purchase was to be made subject "to any rights of way or other easements now of record". The option was executed on February 14, 1924. There was a wash running across the land, where flood waters at times flowed, and on April 22, 1924, the Janss Co. dedicated to the Los Angeles County Flood Control a strip of land through the lot upon which the above option was held, and on the same day such dedication was recorded in the office of the county recorder of Los Angeles County. The purchaser apparently did not

know of this contemplated dedication or that a work of the kind afterwards constructed upon the easement was to be placed on the lot. The day after such dedication the purchaser entered into a formal contract of sale with the Janss Company for the lot in question. This contract contained the following provision: "A perpetual easement is hereby reserved to the seller and its successors and assigns, in and over said real property, for the construction, maintenance and operation therein or thereon of drainage pipes or conduits and pipes, conduits, poles, wires and other means of conveying to and from lots in said tract gas, electricity, power, water, telephone and telegraph service, sewage and other things of convenience to the owners of lots in said tract." The lot agreed to be sold was described in this contract according to a recorded map, specifically referred to. This map so referred to was the one that dedicated the right of way or easement to the Los Angeles County Flood Control and was placed of record the day before the contract was signed. The contract also contained the following clause: "The buyer hereby certifies that he has personally inspected the property herein described, has examined and checked map of same and knows that this property is the identical property he selected and purchased."

The purchasers, in accordance with the contract, entered upon the lot so agreed to be sold and expended in the improvement thereof for the purpose of gardening thereon the sum of $2,000 before they had actual notice of the dedication of the easement to the Flood Control. Some two years after the purchasers went into possession of the lot the Flood Control entered thereon and constructed a storm drain across it, upon the easement granted by the Janss Investment Company. The easement as granted had a width of 75 feet and there was evidence that in parts of its length through the lot that earth had been taken from the ditch and placed along the easement so that the space occupied was 100 or more feet across. There was erected along this right of way a wire fence some 5 or 6 feet in height. These works so erected cut the lot into two parts, leaving the improvements erected by the purchasers upon one part, completely cut off from the other part of the lot by the ditch, banks of earth and two wire fences.

The purchasers in the Kretzschmar case instituted an action in damages against the Janss Investment Company for fraud by reason of the facts above recited. Although upon appeal, this court was required to reverse the judgment therein granted the plaintiffs, because of lack of evidence to support the finding as to damages, it was stated in the opinion (at p. 702, 126 Cal. App) :

''The contract of sale which respondents accepted referred to the map upon which the easement was shown, but there is no evidence that respondents ever saw this map nor that their attention was ever called to it. This map was filed for record but a few hours before this contract was presented to respondents. *It would seem that in common justice that appellants should have at this time by some act on their part directed respondents' attention to the material change that had been made in the lot by the dedication of this easement.* The contract reserved the right to construct drainage pipes and conduits upon the property. Appellants cite authorities to the effect that conduit may mean canal or ditch. This may be true in some cases when the surrounding circumstances justify the use of the word in its broadest sense, but here when read in connection with the contract as a whole, no such meaning can be attached to the term. The option, when entered into, defined the limits of the contractual relation of the parties, and respondents were justified in standing upon its terms. Respondents never consented to any change or modification of this option. *The property covered by the option did materially change in character and appellants had knowledge of this change, but failed to call it to the attention of respondents and so deprived them of the right to withdraw from the purchase. The instant case is one where one is induced to enter into a contract by 'the suppression of that which is true, by one having knowledge or belief of the fact'.* (Civ. Code, sec. 1572, subd. 3.) '' (Italics added.) Although the Kretzschmar case involved a failure to disclose a material change in the property which occurred after the option to purchase was taken, in principle there is little if any difference between deceiving a purchaser to induce him to exercise his option and, as charged in the instant case, deceiving a prospective purchaser to induce him to take an option.

Certainly, it may not be successfully contended that a fill to the depth of 19 feet is not a material factor in considering the purchase of a piece of real property. In so far as the purchase of a building lot for residential purposes is concerned, such a fill represents the difference between a piece of real estate and a hole in the ground.

As to the purported waiver of liability quoted above from the option in question, even if it were not generally settled that fraud vitiates the terms of any contract, the policy of this state with regard to such provisions has been expressly set forth in section 1668 of the Civil Code, wherein it is stated: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Under the allegations of the complaint above set forth, plaintiffs were entitled to prove that the defendant corporations had knowledge of the filled condition of the property, or that they believed the condition existed. While it is true, as pointed out above, that it was stipulated at the trial that defendants knew the property was filled, there was no stipulation as to the extent of the fill. Whether the existence of a fill is a material factor on the sale of a piece of real property depends upon the nature and extent of the fill; and consequently the duty in the instant case to disclose the filled condition depended not so much upon knowledge of the presence of the fill as upon knowledge of, or belief in, the extent thereof. In order to show this knowledge or belief, for example, it would be material to show that the defendant corporations had let the contract for grading the property in question, or that defendant corporations had filed a map showing such fill, in accordance with a city ordinance requiring the same pursuant to the provisions of the Act of 1929 requiring the recording of subdivision maps (Stats. 1929, p. 1790 [Deering's Gen. Laws, 1931, Act 4578; Repealed Stats. 1937, pp. 1863, 1874, § 30; Deering's Gen. Laws, 1937, Act 6500]), and other such evidence tending to show knowledge upon the part of the Janss Investment Company and the other defendant corporation of the condition of the property. Plaintiffs should have been allowed to show, as they proposed to do at the trial, that the fill was of considerable

extent, requiring more than an ordinary foundation to be built under the house that plaintiffs constructed; that plaintiffs were led to believe the property was not filled and accordingly told their architect he need not look at the property; and that the discovery of the filled condition was made only after the excavation was started for the foundation.

Since it appears that the major issue here involved is not the question of representations made by the agent, but that of the fraud of the principal corporations in inducing the contract for the purchase of the property, it follows that the trial court erred in refusing to permit the introduction of parol evidence to show that the contract was induced by fraudulent concealment. ■ It is of course true that defendant Spradling would be personally liable for any fraudulent representations made by him, and the court likewise committed error in finding for the said defendant on this issue without trial thereof.

■ Since the cause must be remanded for a trial of the issues, it may be well to call attention to the present rule as to damages in such cases as embodied in the provisions of section 3343 of the Civil Code, added by Statutes of 1935, page 1612, to the effect that ''one defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.'' The measure of damages thus set forth is the difference between the consideration paid for the property and the actual value of the property, with additional damage, if any. This would appear to abrogate the former rule as set forth in *Rogaff* v. *Bartles* (1931), 115 Cal. App. 429 [1 Pac. (2d) 517], and cases there cited, wherein it was held that the measure of damages was the difference between the actual value of the property and the value it would have had if the representation had been true.

For the foregoing reasons, the judgment is reversed and the cause remanded.

White, J., and Desmond, J., *pro tem.*, concurred.