William O. WALKER, an individual, William O. Walker & Co., Inc., a corporation, and Z of San Diego, Ltd., a California limited partnership, Plaintiffs,

v.

KFC CORP., a corporation, and Heublein, Inc., a corporation, Defendants.

No. 78–0440–CT.

United States District Court, S. D. California.

June 4, 1981.

The trial commenced on August 13, 1980. On September 19, 1980, the jury brought the five week trial to an end by unanimously agreeing on a set of detailed special verdicts. The jury found that Z of San Diego, Ltd., had established each element necessary to recover on its claim for promissory estoppel and fraud and deceit. The jury awarded $298,563.00 for actual losses and $846,426.00 as damages in the form of lost profits. The jury also awarded William O. Walker $70,000.00 for emotional distress.

Counterclaimant/defendant KFC Corp., recovered judgment against plaintiffs in the amount of $117,778.19 for franchise fees, royalties, equipment and goods sold on open account, and equipment financed.

Subsequent to the jury verdict and within the time allowed by the Federal Rules of Civil Procedure defendants filed motions for Judgment Notwithstanding the Verdict, or in the alternative, a new trial, or remittitur.

Robert E. Currie and Jon D. Anderson, of Latham & Watkins, Newport Beach, Cal., and Donald McGrath II, of Thompson, Sullivan, McGrath & McDonald, San Diego, Cal., for plaintiffs.

Stanley H. Williams, and Margot Z. Metzner, of Agnew, Miller & Carlson, Los Angeles, Cal., and Gerald L. McMahon, of Seltzer, Caplan, Wilkins & McMahon, San Diego, Cal., for defendants.

## MEMORANDUM DECISION

NICHOL, Senior District Judge, Sitting by Designation.

## PROCEDURAL HISTORY

In July of 1978, William O. Walker, an individual, William O. Walker & Co., Inc., a corporation, and Z of San Diego, Ltd., a California limited partnership, filed a complaint against KFC Corp. (Kentucky Fried Chicken), a corporation, and Heublein, Inc., a corporation, alleging damages for breach of contract, promissory estoppel, fraud, negligent misrepresentation, breach of fiduciary obligation and constructive fraud, and violation of the California Franchise Investment Law.

## I.

## JUDGMENT NOTWITHSTANDING THE VERDICT (JNOV)

*Applicable Standard*

The standard for granting JNOV is precisely the same as the standard for directing a verdict. *Tackett v. Kidder*, 616 F.2d 1050 (8th Cir. 1980), 9 Wright & Miller, *Federal Practice and Procedure*: Civil section 2737. The motion for JNOV can be granted only if the motion for directed verdict should have been granted. Wright & Miller, *supra*. As good a statement of the test as any is from a decision of the Second Circuit:

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. *Simblest v. Maynard*, 427 F.2d 1 (2d Cir. 1970). *See also Davison v. Pacific Inland Nav. Co.*, 569 F.2d 507 (9th Cir. 1978).

The standard is the same whether it arises in the procedural context of a motion for directed verdict or a motion for JNOV and is the same in the trial court as on appeal. Wright & Miller, *supra* at section 2524.

■ While the Court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury, it must view the evidence most favorable to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. *Id.*

■ These motions should be cautiously and sparingly granted as the fundamental principle is that there must be a minimum of interference with the jury. *Id.*

In accordance with these principles and the standard set out above this Court will now examine the three areas of the law on which the jury verdict was based: promissory estoppel, fraud and deceit, and infliction of emotional distress.

*Promissory Estoppel*

■ Defendants argue that since the parties entered into a contract (i. e., the performance was bargained for), there can be no recovery under the doctrine of promissory estoppel. While it is true that where the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for and made part of the contract, recovery is generally denied, defendants provide no authority for the proposition that the mere existence of a contract between two parties precludes a recovery based on promises that were not part of the contract. *Cf. Youngman v. Neveda Irrigation Dist.*, 70 Cal.2d 240, 74 Cal.Rptr. 398, 449 P.2d 462 (1969), *Healy v. Brewster*, 59 Cal.2d 455, 30 Cal. Rptr. 129, 380 P.2d 817 (1963).

A finding of liability under the doctrine of promissory estoppel requires that there be:

A promise, which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise. Restatement 2d Contracts section 90, Tent. Draft Nos. 1–7, (1973). *See also Aronowicz v. Nelleys Inc.*, 30 Cal.App.3d 27, 106 Cal.Rptr. 424 (1972).

Thus, since the jury found for defendants on the breach of contract claim, the verdict must have been based on promises that were not bargained for and that were not included in the contract. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965) (application of Restatement section 90 in a bargain context).

The record contains statements/promises not contained in the contract on which the jury could have based liability. For example, William O. Walker testified that defendants said that they would develop a nationally recognized "Mexican McDonalds" consisting of more than 1,000 stores in five years, of which plaintiffs would be a part. Walker also testified that defendants told him there would be national advertising by 1978 and that they would provide equipment financing at competitive interest rates. Additionally, both Walker and Michael Duckor, the corporation's Vice President and counsel, testified that defendants told them that there would be or that we (defendants) will have a nationwide chain of over 1,000 Zantigo restaurants within five years.

Thus, there were promises made on which the jury could have based liability and defendants' motion for JNOV on this issue is denied.

■ Defendants also argue that the doctrine of promissory estoppel does not apply where the promises preceded a written contract. The jury was, however, correctly instructed to apply the parol evidence rule as follows:

Oral evidence about any representation, promise, or agreement not part of these written agreements may not be considered by you in connection with the claims for breach of contract or promissory estoppel.

However, when through fraud, mistake or accident a written contract fails to express the real intention of the parties, the real intention is to be regarded, and the erroneous parts of the writing are to be disregarded.

Further, you are instructed that if you find from the evidence that the agreement between the parties was not intended to be contained solely in the written option and franchise agreements, but rather included additional written or oral terms, then such additional written or oral terms may be enforced and damages may be awarded for breach thereof, just as though these portions had appeared in the written agreement.

In reaching a verdict on promissory estoppel, the jury was thus properly instructed that it had to find (1) that the parties did not intend the written option and franchise agreement to be the exclusive statements of any promise or agreement; (2) that defendants made promises to plaintiffs other than those contained in the contract; and (3) that plaintiffs must establish each element necessary to recover on a claim for promissory estoppel. The jury's verdict was proper and will not be disturbed.

■ Defendants also argue that no damages for lost profits under a claim for promissory estoppel may be awarded. While this Court agrees that courts are divided over the limitations, if any, on promissory estoppel damages, it agrees with the statement in a case cited by defendants that "(t)he decision as to the proper measure of damages for breach of promissory estoppel contract ... must initially be that of the trial court." *Swinerton & Walberg Co. v. City of Inglewood*, 40 Cal.App.3d 98, 114 Cal.Rptr. 834 (1974). That anticipated profits can be considered is supported by a recent California case in which the jury returned a general verdict for the plaintiff after having been instructed that it could find liability based on either breach of contract *or* promissory estoppel. *Aronowicz v. Nalleys*, 30 Cal.App.3d 27, 106 Cal.Rptr. 424 (1972). The Court of Appeals found that the jury's verdict was proper since there

was sufficient evidence at trial to support *both* theories. *Id.* The Court indicated that the reasonably anticipated profits could be taken into account. *Id.* 106 Cal. Rptr. at 440. Therefore, it is the opinion of this Court that defendants are not entitled to JNOV on this issue.

*Fraud & Deceit—Concealment of a Fact*

■ Defendants in their motion for JNOV on this issue argue that there was insufficient evidence of any fraudulent concealment and that the fraudulent concealment claim was never even pleaded.

With respect to defendants' insufficiency of the evidence claim they admit that there was conflicting evidence on the issue of when and what they told plaintiffs about changes in the plans for development of a national franchise. Applying the test set out above and thus giving plaintiffs the benefit of all reasonable inferences the above evidence is enough to sustain the jury verdict. The record, however, contains additional evidence on which the jury could have based their verdict. For example:

(a) That defendants knew that the Southwestern United States was saturated with Mexican fast-food competition prior to the time defendants sold plaintiffs franchise rights for San Diego County;

(b) That historically defendants' franchisees have experienced significantly lower sales volumes and profits than company-owned stores;

(c) That defendants had affirmative plans to abort the sale of franchises and the further expansion of the Zantigo concept if sales in the initial franchisee stores were not satisfactory to defendants;

(d) That defendants' capital budget made provision for substantially less expansion than defendants represented as being planned;

(e) That defendants had lost money in the Zantigo concept every year since they acquired it;

(f) That defendants internally had approved plaintiffs' franchise application on the condition that plaintiffs not be given equipment financing;

(g) That defendants from the beginning had selected the best areas of the country for company-store development and allocated what was left over for franchisees;

(h) That the Memphis stores, which were defendants' only test of the concept in a competitive market, had experienced serious sales declines since they opened;

(i) That defendants' market testing and research of the Zantigo concept had been limited to the Mid-west and was not sufficient to predict Zantigo's success on a national basis; and

(j) That defendants were using the franchisees to test the viability of the concept in various regions of the country instead of researching and testing the concept fully before attempting to expand nationally. It is therefore the opinion of this Court that there is ample evidence to support the jury's finding on the issue of concealment.

Defendants also argue that the fraudulent concealment claim was never even pleaded because the original complaint did not include a cause of action labeled "fraud and deceit based on concealment of a fact."

Pleadings are to be construed as to do substantial justice. F.R.C.P. 8(f). This is consistent with F.R.C.P. 1, which states that the rules "shall be construed to secure the just, speedy, and inexpensive, determination of every action." Lawsuits should be determined on their merits and according to the dictates of justice, rather than in terms of whether or not the averments in the paper pleadings have been artfully drawn. 5 Wright & Miller, *Federal Practice & Procedure* : Civil section 1286.

Plaintiffs originally pleaded fraud and deceit and breach of fiduciary duty and constructive fraud. Within these causes of action they alleged that "defendants were privy to material information bearing on the success or failure of plaintiffs' investment . . ." and that defendants failed to disclose material facts relating to their plans for nationwide development.

Local rule 235–4(g) also provides that the pretrial order, which is based on the parties' "Pretrial Memorandum of Contentions"

supplements the pleadings and governs the course of the trial. Plaintiffs' Pretrial Memorandum of Contentions of Fact and Law contains repeated references to concealment. For example:

33 "Defendants recognized and planned on (but concealed from plaintiffs) . . ."

35 "This fact was concealed from plaintiffs."

36 "Had the true facts been known . . ."

38 "The decision to withdraw from the California market was not disclosed."

39 "(A)fter defendants made but concealed the termination decision."

43 "At no time was this condition revealed to plaintiffs."

48 "Defendants controlled and were privy to decisions and material information bearing on the success or failure of plaintiffs' investment, including critical information regarding defendants' intentions to develop the Zantigo restaurant franchise scheme on a nationwide basis, and, particularly, on the west coast. Defendants concealed substantial changes in expansion plans from plaintiffs, knowing that plaintiffs were detrimentally relying on defendants' original representations about expansion."

Thus, it appears to this Court that defendants had adequate notice that the issue of fraudulent concealment of a fact was being tried. Additionally, plaintiffs' theory of their case is refined ultimately by the court's instructions to the jury. *Bryan v. Merrill Lynch, Pierce, Fenner & Smith*, 565 F.2d 276 (4th Cir. 1977). Plaintiffs submitted instructions before trial on all issues submitted to the jury, including fraudulent suppression of a fact and defendants are therefore not entitled to JNOV on this issue.

*Damages for Emotional Distress*

With respect to the emotional distress damages defendants argue that there is no basis in law for these damages and that the award should therefore be set aside.

As stated above, however, the court's instructions to the jury refine the pleadings. *Bryan v. Merrill Lynch, Pierce, Fenner & Smith, supra.*

While defendants are correct that Mr. Walker did not label a separate cause of action "Intentional Infliction of Emotional Distress," the complaint, the pretrial memorandum, and plaintiffs' proposed jury instructions all contained the necessary allegations needed to recover damages for emotional distress.

The instruction on emotional distress, except for the reference to negligence, is verbatim BAJI 12.85. *See also Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 84 Cal.Rptr. 78 (1970).

Pleadings are to be judged by their substance, not their form or label, and should be construed to give effect to all allegations. *United States v. White County Bridge Comm'r,* 275 F.2d 529 (7th Cir. 1960). Since the jury was properly instructed on the elements necessary for emotional distress recovery and because defendants knew from the beginning that Mr. Walker was seeking recovery for emotional distress, the defendants suffered no prejudice and the jury verdict will not be disturbed.

This Court also finds defendants' other argument of no substantial proof of causation to be without merit and defendants' motion for judgment notwithstanding the verdict is hereby in all things denied.

## II.

## NEW TRIAL

*Applicable Standard*

It is well settled that the court has broad power to grant a new trial in order to ensure that an unjust verdict does not stand. *Haber v. County of Nassau,* 557 F.2d 322 (2d Cir. 1977), 6A J. Moore, *Federal Practice* 59.08. A motion for a new trial, unlike a motion for a directed verdict or for JNOV, does not test the legal sufficiency of the evidence adduced at trial by the prevailing party. Thus, although the evidence may have been legally sufficient to submit the case to the jury, the Court nevertheless may, in the exercise of its discretion, grant a new trial on the ground that the verdict is against the weight of the evidence. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1950), *Hanson v. Shell Oil Co.,* 541 F.2d 1352 (9th Cir. 1976), 6A J. Moore, *Federal Practice* 59.-08(5). In evaluating the evidence, the Court may properly consider the credibility of witnesses. *Fount-Wip, Inc. v. Reddi-Wip, Inc.,* 568 F.2d 1296 (9th Cir. 1978).

As good a statement of the applicable standard as can be found is contained in Moore's *Federal Practice,* Vol. 6A, 59.08(5):

The trial judge, exercising a mature judicial discretion should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

Defendants' motion for a new trial is based on the grounds that the verdict is against the weight of the evidence, that the Court erred in the giving and refusing of certain instructions, and that damages were excessive.

*Verdict Against the Weight of the Evidence*

Defendants argue that the verdict on the promissory estoppel and concealment of a fact causes of action are against the weight of the evidence.

As Judge Parker stated in *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir. 1941):

On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be sub-

stantial evidence which would prevent the direction of a verdict.

The Court, however, has previously reviewed the evidence with respect to these two causes of action and is of the opinion that the verdict is not against the clear weight of the evidence. Accordingly, defendants' motion for a new trial on this issue is denied.

Defendants also continue to argue, as they did throughout trial, that the weight of the evidence is overwhelming that the cause of plaintiffs' loss was their own lack of financial resources. Defendants, however, do not dispute the Court's instructions to the jury on proximate cause and causation. Rather, they argue that the jury erred in not seeing the facts the way defendants wanted them to. This Court, however, in the exercise of its discretion refuses to substitute its judgment of the facts for that of the jury's and defendants' motion for a new trial on this issue is denied.

*The Court Erred in its Instructions to the Jury*

■ Defendants argue that the Court's refusal to include the requirement of a clear and unambiguous promise in its promissory estoppel instruction, instead of "that the defendants made a promise to the plaintiff", was prejudicial error and requires a new trial. Defendants fail, however, to cite any law requiring the inclusion of "clear and unambiguous promise" in a promissory estoppel instruction. Rather, the law supports the instruction as given.

The California Supreme Court has held that the measure of recovery in a promissory estoppel case "lies in the enforcement of the defendant's promise." *Tomerlin v. Canadian Indemnity Co.*, 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571 (1964). The Restatement of Contracts also supports the instruction as given. The original Restatement included the requirement of a promise "of a definite and substantial character on the part of the promisee;" however, this language is not contained in the new ·Restatement of Contracts (Second) section 90.

Since the instruction was based on California law and the Restatement (Second) of Contracts, it was not error and a new trial on this issue will not be granted.

Defendants also argue that the Court's instructions on concealment were improper and seriously prejudiced defendants and thus requires a new trial.

Defendants raise two issues relating to the Court's instructions in this area. The first takes issue with the Court's use of the word "concealment" instead of the word "suppression" in the special interrogatories, and the second deals with the duty to disclose.

With respect to the Court's use of "concealment", plaintiffs proposed and the Court gave instructions setting forth almost verbatim the text of California Civil Code sections 1572[1] and 1710[2]. The Court also gave the jury detailed instructions on alternative theories contained in the statutory

---

1. Section 1572. Actual fraud

ACTUAL FRAUD, WHAT. Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
3. The suppression of that which is true, by one having knowledge or belief of the fact;
4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.  ·

2. Section 1710. Deceit defined

DECEIT, WHAT. A deceit, within the meaning of the last section, is either:
1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,
4. A promise, made without any intention of performing it.

definitions of fraud and deceit as follows: intentional misrepresentation, negligent misrepresentation, promise without intent to perform, and concealment or suppression of a fact.

Civil Code section 1572 specifically provides a fraud cause of action where a party to a contract with knowledge of a fact "suppresses" (BAJI instruction 12.35 uses the phrase "concealed or suppressed") the fact from another with intent to deceive the other, or to induce the other to enter into the contract.

■ Therefore, it is the position of this Court that the use of the word "concealment" was not inconsistent with California law and the charge, taken as a whole, fairly and adequately submitted the issues in the case to the jury. *Pollock v. Koehring Co.*, 540 F.2d 425 (9th Cir. 1976), *Nolan v. Greene*, 383 F.2d 814 (6th Cir. 1967), *Pacific Greyhound Lines v. Zane*, 160 F.2d 731 (9th Cir. 1947), 9 Wright & Miller *Federal Practice & Procedure* section 2558, 11 Wright & Miller *Federal Practice & Procedure* section 2886.

With respect to the duty issue the court gave BAJI instruction 12.35[3] and then went on to instruct as follows:

> Except as you may otherwise be instructed, where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to disclose such known facts.
> A duty to disclose known facts arises out of the obligation of good faith and fair dealing in the performance of a contract. You are instructed that plaintiffs and defendants each owed such a duty to the other in the performance of their respective obligations under the franchise and option agreements and any other agreements that you find.

■ California Civil Code section 1572 deals with fraud between parties to a contract. It does not require that a separate duty of disclosure be established; instead the plaintiffs need only prove that defendants were a party to a contract and that they suppressed a known fact. It does not require any separate finding of a duty to disclose. The duty to disclose comes from Civil Code section 1710, which can apply to situations where no contract is involved. Because defendants' fraud arose out of the inducement or performance of a contract, however, the Court's instruction on duty to disclose was not improper.

■ Even if plaintiffs were required to establish that defendants owed an additional duty to disclose known facts, there can be no doubt that such a duty existed, regardless of whether the fraud arose out of a contract situation. First, where the defendant alone has knowledge of material facts which are not accessible to the plaintiff, a defendant inducing the plaintiff to purchase from him has a duty to disclose those material facts. *See e. g. Rothstein v. Janss Inv. Corp.*, 45 Cal.App.2d 64, 68, 113 P.2d 465 (1941). A second situation, the only one addressed by defendants, exists where the defendant actively conceals facts from the plaintiff. *See e. g. Williams v. Graham*, 83 Cal.App.2d 649, 652, 189 P.2d 324 (1948). It is also important to note that active concealment (BAJI 12.37) is an alternative, not exclusive, ground for recovery. The third additional situation in which an affirmative duty to disclose is imposed where one who otherwise is under no duty to disclose nevertheless does so. Once a disclosure is made, it must be honest and not incomplete or misleading. *See Sullivan*

---

3. BAJI 12.35. FRAUD AND DECEIT—CONCEALMENT
    1. The defendant must have concealed or suppressed a material fact;
    2. The defendant must have been under a duty to disclose the fact to the plaintiff;
    3. The defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;
    4. The plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;
    5. And, finally, as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*v. Helbing*, 66 Cal.App. 478, 485, 226 P. 803 (1924). The common law covenant of good faith and fair dealing embraces these concepts. It is, however, not the sole basis of the duty to disclose. This additional duty is implied into every contract and has been recognized in California for many years. *See e. g. Brown v. Superior Court*, 34 Cal.2d 559, 564, 212 P.2d 878 (1949).

■ While technically the Court's instruction may have been more accurate if it had stated that the existence of a contractual relationship imposed on both parties a duty to disclose all material facts relating to the transaction or if it had omitted entirely the reference to a duty to disclose, the substance of the applicable law was fairly and accurately covered. *Pollock v. Koehring Co.*, 540 F.2d 425 (9th Cir. 1976).

■ No harmful error is committed if the charge, in general, correctly instructs the jury on the law, even though a portion is technically imperfect. *Andry v. Farrell Lines, Inc.*, 478 F.2d 758 (5th Cir. 1973).

Ultimately, however, the duty question becomes a non-issue. Civil Code section 1572 affirmatively imposes the duty not to suppress facts on persons who are parties to a contract or who are inducing others to enter into a contract. Certainly, defendants cannot dispute that they fall into this category.

The Court's instructions, taken as a whole were consistent with California law and the jury's verdict will not be disturbed. Defendants' motion for a new trial on this issue is denied.

*Damages*

Defendants also claim that the damages were excessive and that the Court's refusal of a proposed instruction on limiting damages was error and that they are entitled to a new trial on the question of damages.

With respect to the damages being excessive it is the position of this Court that the determination of the amount of damages is primarily and largely the province of the jury, under proper instructions given by the court.

■ In the instant case sufficient evidence was presented, without contradiction, by the plaintiffs through Mr. Bonacci of Price Waterhouse, and Mr. Neffeler, an economist, what future profits would have been. Thus, this Court feels that the award was fair, was not against the weight of the evidence, and bore a reasonable proportion to the damages suffered. Therefore, the jury determination will not be disturbed.

On the issue of a limiting instruction the Court has carefully reviewed its charge to the jury and finds that the instructions were proper as to form and sufficiency. The jury was properly instructed regarding the elements and measure of damages and the instructions were confined to matters in issue by virtue of the pleadings and evidence in the case. A new trial on this issue or any of the above discussed issues will not be granted.

## III.

## REQUEST FOR REMITTITUR

The verdict is not the result of passion, bias, or prejudice, is not grossly excessive, does not shock the Court's conscience, and is supported by substantial evidence. Therefore, defendants' request for remittitur is denied.

## IV.

## CONCLUSION

A copy of the jury instructions and detailed special verdicts and interrogatories were given to the jury for their use in deliberations. It is the Court's opinion that the jury very carefully considered all the alternatives and made the correct decision on liability and awarded a reasonable amount of damages.

Thus, it is the conclusion of this Court that defendants received a fair trial and a fair verdict which was based on correct legal principles and substantial evidence. Defendants' motions for Judgment Notwithstanding the Verdict, for a new trial, and request for remittitur are hereby in all things denied.

Plaintiffs' counsel will prepare and submit an appropriate order in accordance with this memorandum decision.