VERDA E. BARDER, Respondent, v. ELLERY G. Mc-
CLUNG et al., Defendants; RAYMOND E. PIERCE
et al., Appellants.

Henry C. Rohr for Appellants.

Richard M. Thompson for Respondent.

DRAPEAU, J.—The instant action for damages is based upon the alleged fraud of defendants in a sale to plaintiff of residence property in Los Angeles consisting of a five-room dwelling and a detached garage containing a dwelling unit of one room, kitchen and bath. When the buildings were originally constructed in 1941, separate building permits were issued upon application of defendants' contractor, the permit for the garage building carrying the notation: ''Double Garage—with living quarters—Den and Bath—No kitchen.'' Also ''Zone & yards O.K. Byron 6-20-41.''

In 1943, without obtaining a permit therefor, defendants extended the garage unit about 2½ feet and added a kitchen. According to defendants' story the labor incident to this change was performed on a daily wage plus materials basis by a man sent to them by the original contractor, Ed Smith. Defendants were unable to remember this man's name or the amount of money they paid him for the work.

In July of 1946, defendants sold the property to plaintiff for $13,150, and in August of 1947, plaintiff was notified by the city zoning administrator that the garage unit was being maintained in violation of the city zoning ordinances. Thereafter, on September 15, 1947, plaintiff was granted a variance on a temporary basis permitting the use and maintenance of a second detached dwelling unit on an R-2 zoned lot for a period of five years, upon the conditions (1) that all kitchen facilities be removed at the end of the period on September 30, 1952, and (2) that she file and record an agreement to that effect ''in the office of the County Recorder of Los Angeles County prior to the issuance of any building permits or electrical power permits, such agreement to run with the land

and be binding upon all future owners, heirs, or assigns in interest."

In her complaint, plaintiff alleged that defendants knew both at the time of construction and at time of sale that the buildings did not conform to the zoning ordinances, and in order to induce her to purchase the property, defendants represented to her and her husband that it was improved with two dwelling units, and that they could occupy one of them as their own residence and lease the other unit for income purposes; that such representations were false and fraudulent and made with the intention that plaintiff and her husband should rely thereon, which they did to their damage in the sum of $4,650.

The trial court gave judgment to plaintiff for $1,250 and found, among other things, that: In the year 1943, defendants substantially altered the garage building and fitted it with a kitchen "in violation of then existing zoning regulations and building restrictions" knowing that such altering and fitting were in violation of existing zoning regulations and building restrictions, both at the time the work was done and at the time of sale to plaintiff. That plaintiff was wholly unfamiliar with the violation, but relying upon fraudulent statements made to her by defendants was induced to purchase the property for $13,150, when it was not worth in excess of $11,900.

Defendants appeal from the judgment on the ground that the evidence is insufficient to sustain it because of lack of proof of the applicable zoning ordinance, or that defendants had knowledge thereof. In this connection, defendants urge that "Plaintiff's burden was first to prove what Defendants were charged with knowing, and then to prove that Defendants actually had such knowledge when they sold the property to Plaintiff."

Plaintiff offered in evidence the comprehensive zoning plan of the city of Los Angeles, effective as of June 1, 1946, which provides that its terms "in so far as they are substantially the same as existing ordinances relating to the same subject matter, shall be construed as restatements and continuations and not as new enactments"; and that its purpose "is to consolidate and coordinate all existing zoning regulations and provisions into one comprehensive zoning plan. . . ."

While the exact terms of the zoning regulation applicable to the instant property in 1943 were not presented in evidence, the comprehensive zoning plan and the ruling of the city zoning administrator, made after a hearing before him

on August 25, 1947, support an inference that the property was in an R-2 zone in 1943, and that the addition of a kitchen to the detached garage unit constituted a violation of a then existing zoning regulation.

The following evidence tends to prove that defendants, at the time they sold the property to the plaintiff, knew they were using and maintaining a building in violation of zoning regulations:

The 1941 permit to construct a double garage, with living quarters, den and bath, "No kitchen."

The testimony of Mrs. Bertha Griffin that when defendant Hannah Mae Pierce was showing her the garage apartment in September of 1941, the witness asked: "Why don't you make a kitchen out of this room? And she said that the FHA wouldn't let them, that they did not have a permit to have a kitchen there."

The testimony of Mrs. Marjorie Barden, daughter-in-law of plaintiff, that she first met defendants on July 22, 1946; that about a year later while she was living in the garage unit, an electrical company refused to wire the place for an electric range; that she took up the matter with defendants, at which time Mrs. Pierce told her: "You have no business getting an electric range anyway. You should use the gas that was already back there. . . . Well, if you wouldn't have stirred all this up, they wouldn't have found it . . . I mean, we wouldn't have had any trouble over it . . . Nothing would have occurred if you wouldn't have insisted on having an electric stove. . . . Well, why on earth don't you just use the gas stove."

Mr. Pierce was called under section 2055, Code of Civil Procedure, and testified that when he erected the buildings in 1941 he was not told that he could not have a kitchen; that all they wanted was "a little den off the back of the garage"; that in 1943 he helped to dig the trench for gas pipes "for the little apartment on the back of the garage," for the kitchen in the rear; that he had no permit, having left "those matters" to the contractor Ed Smith; that the work was done by Mr. Smith's friend, whose name the witness did not know, and who was paid $400 for his work; that the witness did not know from the permit issued in 1941 that he could not put a kitchen in the garage unit.

Mr. Pierce testifying for the defense stated that before the property was sold to plaintiff, he was not aware of any pur-

ported violation of any zoning plan; that when he added the kitchen in 1943, contractor Smith was "supposed" to handle the matter of a permit. On cross-examination, this witness testified that he understood he had to have permission to install a kitchen from the F. H. A. which held the loan on the property; that he never signed any papers of any kind for a permit of any type.

Mrs. Pierce stated that in 1943, she talked to Mr. Smith regarding the alterations to the garage and that "He told us that we would have to get permission from the FHA as we hadn't completed paying off our mortgage from them, so we were both working and he said he would see about it for us." When asked if she knew that the rear dwelling may have been completed in violation of the city of Los Angeles zoning ordinance, she replied: "No, sir." She also testified that she paid the man who did the work each week in cash and took receipts therefor. However, she was unable to locate these receipts and was unable to remember the man's name.

Mrs. Beatrice Smith testified that her husband, Ed Smith, died on June 6, 1945; that she assisted him in his business of contracting during his lifetime, and "filled out all of the permits and went up to the City Hall and procured them"; that after 1941, neither she nor her husband had constructed any further buildings for defendants, and that her husband had not sent any carpenter to defendants' residence to do any work in 1942 or 1943.

The question of knowledge on the part of defendants was one of fact. The foregoing résumé discloses sufficient evidence in support of the trial court's finding that defendants altered the garage building and fitted it with a kitchen, knowing that such alteration was in violation of then existing building restrictions and zoning regulations.

While defendants assert that they never told plaintiff and plaintiff never asked them whether the rear house could be maintained as a separate apartment, they admit that they listed the property with a real estate agent as "a five room stucco and two room apartment." Moreover, the property was open to inspection; plaintiff was invited to look at it, and in conversations with plaintiff, defendants referred to the unit in the rear of the garage as having "an inner door bed in the living room and a kitchen and a bath."

Defendants argue that since plaintiff purchased the property in reliance upon her own examination of the premises, she was not misled by them. Apropos of this, the following

appears in *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 748 [192 P.2d 935] : ''An independent investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 434-435 [159 P.2d 958] ; *Shearer* v. *Cooper,* 21 Cal.2d 695, 702, 704 [134 P.2d 764].) ''

Again in *Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.2d 64, 68 [113 P.2d 465], it is said: ''But personal inspection is no defense when and where the conditions are not visible and are known only to the seller, and 'where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee.' (*Clauser* v. *Taylor,* 44 Cal.App.2d 453 [112 P.2d 661]) . . .''

Neither can it be said that plaintiff was bound by constructive notice of the zoning ordinance, because as stated in *Seeger* v. *Odell,* 18 Cal.2d 409, 415 [115 P.2d 977, 136 A.L.R. 1291] : ''The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations, but to *bona fide* purchasers for value.''

In the circumstances presented, it was the duty of defendants to disclose to plaintiff that the rear apartment was maintained and used in violation of existing zoning ordinances. Instead, they remained silent, to their profit. Fraud may be either actual or constructive. The suppression of that which is true, by one having knowledge or belief of the fact, is actual fraud. (Civ. Code, § 1572; *Snyder* v. *Security First Nat. Bank,* 31 Cal.App.2d 660, 664 [88 P.2d 760].) ''Deceit may be negative as well as affirmative; it may consist in suppression of that which it is one's duty to declare, as well as in the declaration of that which is false.'' (12 Cal.Jur. 770.)

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 17, 1949.