[Civ. No. 15823.   First Dist., Div. One.   June 9, 1954.]

CONRAD WATT et al., Appellants, v. GRACE M. PATTERSON, Respondent.

Foley, Foley, Andreuccetti & Foley and James W. Foley for Appellants.

Peter Anello for Respondent.

WOOD (Fred B.), J.—In October, 1947, plaintiffs purchased a house and lot from the defendant. The house contained a front apartment of six rooms and a rear apartment of four rooms. There was also a garage which had been converted into a bedroom. Defendant occupied the front apartment except two bedrooms which she rented to different persons. The rear apartment and the garage-bedroom were also rented.

In April, 1950, plaintiffs filed this action for damages predicated upon asserted fraudulent misrepresentation of material facts by the defendant. They alleged that the defendant falsely informed them that the premises consisted of five rental units, four of which were and all of which could be rented and that the legal and proper rent ceiling would result in the rental of said units at a total of at least $221.50 per month. The trial court found against plaintiffs' contentions and rendered judgment for the defendant.

Plaintiffs have appealed. They contend that the court's findings of facts are without support in the evidence. They claim the evidence shows that defendant represented that rental ceilings had been fixed by the O.P.A. for each of the five units, whereas that was true only as to three of the units. They also claim the very fact that defendant was operating this property as a rooming house was a representation by her to them that it was legal to do so, whereas they later found that a municipal ordinance prohibited such a use by restricting houses in this area to use as single-family residences.

*The two units for which rental ceilings had not been fixed* were the garage-bedroom and that portion of the front apartment which defendant occupied. Rental ceilings had been fixed by the O.P.A. for the middle and the rear bedrooms of the front apartment and for the rear apartment. Plaintiff Conrad Watt visited the place at least twice before buying.

Defendant testified that she made a list of the ceiling rentals and gave it to Mr. Watt; that she gave him all her rent ceiling papers. Asked if she showed him the O.P.A. documents, she said "He had them all." She said she never told Mr. Watt or Mr. Brown, the real estate broker who conducted the sale, that she had a ceiling from the O.P.A. for rental of the garage-bedroom; nor did she tell either of them she had a $45 ceiling or any ceiling for the front room or the portion which she was occupying. Asked if she made any falsehoods of any kind to Mr. Watt she said, "No, sir, I did not."

Watt testified that defendant told him the part she was occupying ought to bring him at least $45; that she said she had a ceiling price on all the place there; she showed him some of the papers; she said she had a ceiling price from the O.P.A. on "most of those places in there"; "she didn't say exactly how much the ceiling price on that thing [the front room], but she says could easily bring at least $45 a month." He said she showed him some of the O.P.A. documents. He did not believe she had any for that front room. "She had something in there she said she had renting it before," had rented it for about $14 a week. He did not see an O.P.A. document in reference to the front room. He did see an O.P.A. regulation concerning the middle room and the rear room of the front apartment. And he saw the O.P.A. regulation concerning the rear apartment. He did not see any for the garage-bedroom. This testimony was not in all respects inconsistent with defendant's testimony. His assertion that she said she had a ceiling price on all of the place merely produced a conflict in the evidence which the trial judge resolved in favor of the defendant.

Plaintiffs, in their briefs, rely to a considerable extent upon a certain item which appears in the multiple listing contract prepared by Brown, the real estate broker: "Income—Gross $180.00+Apt. Expenses 25.00 mo. 'Ceiling' Rent Apt. 45.00." Brown interpreted this item as meaning that rents currently received amounted to $180 a month and that the portion of the apartment occupied by defendant had a legally established rental ceiling of $45 a month. However, our attention has not been directed to testimony of Mr. Watt indicating that he relied upon any of these recitals in the multiple listing contract or that they came to his particular attention, nor have we found any. (See *Bank of St. Helena* v. *Lilienthal-Brayton Co.*, 89 Cal.App. 258, 263 [264 P. 546], and cases there cited.) He testified at some length concerning what he

observed and what Brown and the defendant told him when he visited the property before buying it. It is a fair inference that to the extent that he relied, if at all, upon representations of the defendant, he relied upon the information which she orally furnished and the papers and documents which she delivered to him, not upon recitals appearing in the multiple listing contract. Incidentally, defendant testified that when filling in the items on the multiple listing contract Brown asked her, in case the front part were rented, if she thought it would be worth $45 a month, and she told him that in view of the fact that the rear apartment rented for $45 a month she thought the front would be worth that much, but she did not tell him there was a rental ceiling on the front apartment. In the absence of evidence or inference that Mr. Watt relied upon the recitals of the multiple listing contract, it is unnecessary to consider what those recitals would have meant to him if he had relied upon them nor what defendant's legal responsibilities, if any, for the making of those recitals might have been.

*Concerning the single-family zoning ordinance restriction,* there was no express representation.

It was, of course, obvious that defendant was renting rooms and that she extended to some of the roomers the privilege of sharing in the use of her kitchen and other facilities. Brown said he told plaintiffs the property was being operated as a rooming house, that it was a dwelling house cut up into a rooming house. He did not tell them defendant had permission legally from the city or from the O.P.A. to operate a rooming house. He did not know what the zoning was. Defendant at no time told him. He did not make any representation to Mr. Watt as to zoning.

Defendant testified she did not know this property was in a single-family residence zone. She had never heard of zoning. She had never had an apartment house or a rooming house; this was the only property she ever owned or sold. Before she bought this place it was being used as a two-family residence. The family that owned it occupied the front apartment and rented out the rear apartment. After she had redecorated the interior she began renting the middle bedroom. That was in 1946. Whenever she was making arrangements to lease one of her rooms she always consulted the O.P.A. and they gave her authorization. They never told her she could not rent the rooms.

Asked if anything was ever said about the city zoning ordinances in the conversations between him and Brown or the defendant in connection with the sale of this property, Mr. Watt said "that's something I never heard from either one of them." He testified he had been living in this area since 1922, was familiar with this general area where he bought this property, but did not know it was an R-1 zone, a single family residence zone. Asked if he had two pieces of real property before he bought this property from defendant, he answered, "Yes."

Where here was there actionable fraud?

■ "The elements of actionable fraud, which must be pleaded and proved if a plaintiff is to prevail, consist of a false representation of a material fact, made with knowledge of its falsity and with the intent to induce reliance thereon upon which plaintiff justifiably relies to his injury. [Citation.] The omission of a single one of these elements in an action for deceit will normaly [sic] prevent recovery. [Citations.] In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant. [Citations.]" (*Wishnick* v. *Frye*, 111 Cal.App.2d 926, 930 [245 P.2d 532].)

What false representation of a material fact did defendant make, with knowledge of its falsity and with intent to induce reliance thereon?

She had no knowledge of the zoning ordinance or of its restrictions as to use of this property. She made no representation, uttered no statement, expressed no opinion concerning the legality of its use as a rooming house.

Yet, plaintiffs say they "had a right to believe that . . . [ defendant's] use of the premises was in all respects in full compliance with laws and ordinances applicable thereto, . . . [defendant] having said nothing to the contrary," and that she "either knew or should have known that she was using the property in violation of existing zoning, and therefore was under a duty to call that to . . . [plaintiff's] attention."

Whence sprang this duty affirmatively to apprise plaintiffs of the restrictions imposed by this law of which defendant was totally unaware? ■ They seem to predicate this "duty" mainly upon the familiar rule of law that every property owner is presumed to know his property, its quali-

ties and characteristics. (*Salomons* v. *Lumsden,* 95 Cal.App. 2d Supp. 924 [213 P.2d 132], the area and boundaries of land; *de Bairos* v. *Barlin,* 46 Cal.App. 665, 670 [190 P. 188], the amount of street frontage; *Stirnus* v. *Adams,* 50 Cal.App. 730 [195 P. 955], the age and condition of an orchard; *Gaffney* v. *Graf,* 73 Cal.App. 622 [238 P. 1054], the model of an automobile.) But that rule does not of itself require of a property owner that he acquire knowledge of and inform his buyer concerning laws that affect and restrict the use of the property or suffer damages for his unwitting concealment.

■ Another well established rule comes into play at this point, the rule that ''an opinion [on a question of law based on facts known to both parties alike] by one occupying no confidential relation toward the person to whom it is addressed does not justify such person in relying upon it, and it is not a sufficient basis to support a charge of fraudulent misrepresentation. [Citations.]'' (*Rheingans* v. *Smith,* 161 Cal. 362, 365 [119 P. 494, Ann.Cas. 1913B 1140]. See also *Smith* v. *Brown,* 59 Cal.App.2d 836, 838 [140 P.2d 86]; 12 Cal.Jur. 731, Fraud and Deceit, § 17; 23 Am.Jur. 781, Fraud and Deceit, § 27; 3 Restatement of the Law of Torts, §§ 545 (2) and 542.)

■ Here we have a question of law,—the existence, the provisions, the meaning, and the applicability of a zoning ordinance. All of the pertinent facts (a two-apartment dwelling house, operated as a rooming house) are equally well known to both parties. Defendant made a full and detailed disclosure of her rooming house operations. There is no confidential, fiduciary or other relationship which might impose upon defendant a duty to know about this ordinance, for the benefit and protection of the plaintiffs, and to inform them of its provisions.

Of a sales transaction quite similar to this, the court in *Kazwell* v. *Reynolds,* 250 Ill.App. 174, 177, said: ''The ordinance in question was a matter of record in the village where the property was located and was easily ascertainable by both plaintiff and defendant. If, as alleged in the bill of complaint, neither party knew of that fact, then it becomes the duty of the purchaser to have advised himself as to whether or not such an ordinance was in existence.'' (See also *Lincoln Trust Co.* v. *Williams Bldg. Corp.* (1920), 229 N.Y. 313 [128 N.E. 209]; note in 175 A.L.R. 1056; 55 Am.Jur. 705, Vendor and Purchaser, § 250)

In view of these principles of law, the relationship of the parties, defendant's total unawareness of the single-residence zone ordinance, and the absence of any express representation that this house was legally available for use as a rooming house, we find no basis for holding defendant legally responsible to the plaintiffs for the loss which they putatively suffered. Under such circumstances, the mere fact that defendant was operating a rooming house furnishes no basis for a reviewing court to reverse a finding of the trial court that no actionable misrepresentation was made in respect to the uses for which the property in question was legally available.

The authorities upon which plaintiffs rely are not persuasive of a different view. In *Barder* v. *McClung,* 93 Cal.App.2d 692 [209 P.2d 808], the vendor had substantially altered a garage building and fitted it with a kitchen in knowing violation of zoning regulations and building restrictions. "The question of knowledge on the part of defendants was one of fact. The foregoing résumé discloses sufficient evidence in support of the trial court's finding that defendants altered the garage building and fitted it with a kitchen, knowing that such alteration was in violation of then existing building restrictions and zoning regulations." (P. 696.) "In the circumstances presented," said the court, "it was the duty of defendants to disclose to plaintiff that the rear apartment was maintained and used in violation of existing zoning ordinances. Instead, they remained silent, to their profit." (P. 697.)* That is not a holding that the defendant in our case, under the circumstances of our case, was under a duty to ascertain the existence of the ordinance and inform plaintiffs of its provisions.

In *Milmoe* v. *Dixon,* 101 Cal.App.2d 257 [225 P.2d 273], the vendors represented that they had erected the house themselves and that it was strong and well built. The "defects as found by the trial court were of a technical nature [inadequate foundations and bolts, over-spaced wall studding, insufficient corner studding, plaster applied on an unauthorized base, improperly spliced studding, missing angle braces, and untreated mudsills] and it is unlikely that ordinary dili-

---

*Later cases which follow the Barder case and apply its rationale have involved specific misrepresentations of facts by the seller or concealment of material facts known to the seller which he knows are unknown to the buyer. (See *Bobak* v. *Mackey,* 107 Cal.App.2d 55 [236 P.2d 626];*Tatham* v. *Pattison,* 112 Cal.App.2d 18, 21 [245 P.2d 668]; *Curran* v. *Heslop,* 115 Cal.App.2d 476, 480, 481 [252 P.2d 378].)

gence on the part of the respondents [vendees] would have revealed their presence inasmuch as most were apparently not visible to the eye since they had been concealed by outer construction and were only revealed after alterations had been commenced.'' (P. 260.) The vendors also concealed the fact that they had done this construction work without the legal building permits. That concealment of structural defects and of lack of governmental building permits, inspection and approval, is actionable, furnishes no precedent for holding the defendant's conduct actionable in the instant case.

■ Plaintiffs direct attention also to section 17507 of the Health and Safety Code which requires one water closet for each family living in a dwelling. Mr. Watt's inspection and the information freely given him put him in possession of all the relevant facts. Defendant's lack of actual knowledge of this code provision and her failure to apprise Mr. Watt of its existence is no more actionable, under the circumstances of this case, than her unawareness of the zoning ordinance and failure to tell him of its restrictions.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.