[Civ. No. 4929. Fourth Dist. May 5, 1955.]

KATHERINE M. ATWOOD et al., Respondents, v. ANDREW ELLSWORTH ELWOOD, as Executor, etc., Appellant.

Lawrence W. Young for Appellant.

Duard F. Geis, Joseph L. Joy and H. W. Glensor for Respondents.

GRIFFIN, J.—This is an action brought by Katherine M. Atwood, Verge Crossman, Birdie Nephew, Noel Wright, Marie E. Marlar, Harold Wright, W. B. Marlar, Hazel Eymann, John C. Wiseman, Frank K. Wiseman, Florence Morton, Newton Wiseman, Ellen Hedrick and Clarence Estes, plaintiffs, and Sue H. Clowdsley, administratrix of the estate of Newton Wiseman, deceased, Gladys I. Selby, administratrix of the estate of John C. Wiseman, deceased, Mary Freear, administratrix of the estate of Frank Wiseman, deceased, and Jessie H. Cleveland, administratrix of the estate of Ellen Hedrick, deceased, designated supplemental plaintiffs, against Andrew Ellsworth Elwood, as executor of the last will and testament of Commilia Elwood, deceased, substituted by order of court for Commilia Elwood, deceased, defendant and appellant, and defendants Irma Elwood Mazzei, Leonard Elwood, Andrew Ellsworth Elwood, Mary Elwood, Ida Birmingham and Leona Elwood, being certain heirs who were made defendants because they refused to join as plaintiffs herein. They will hereinafter be referred to as plaintiffs.

The complaint in the first cause of action is an ordinary action to quiet plaintiffs' title against appellant to certain claimed undivided interests in and to certain oil-bearing lands in Kern County referred to as Section 2, and containing approximately 40 acres. As a second cause of action the claimed title of plaintiffs and appellant is alleged. It is then claimed

that Burton Elwood, deceased husband of Commilia Elwood, held certain deeds executed by plaintiffs, their ancestors, or their representatives, wherein the property was deeded to said Burton Elwood, in trust, for the purpose of securing a patent on the described land; that the patent was obtained, but Burton Elwood failed and refused to reconvey said property to plaintiffs and that appellant now, in violation of said trust, claims the whole of the property and the royalties obtained thereon as belonging to the estate of Commilia Elwood, deceased. The third count is for declaratory relief, in which a determination of the respective rights of plaintiffs and appellant are sought, as well as a determination of the respective titles of each of said parties.

The manner in which the respective parties obtained and now claim an interest in the land here under consideration is quite involved. As a part of the background, it appears that in 1899, six men, named J. C. Marlar, J. M. Elwood, Jonathan Elwood, Burton Elwood, Judson F. Elwood, and George Wiseman, all farmers and related by blood or marriage, took up a piece of oil land in Kern County (Section 3). They performed labor upon it and oil was discovered. A corporation was formed (Kings River Oil Company) and equal shares of stock were issued to the respective parties. By some agreement between them, three of these men, J. C. Marlar, Jonathan Elwood and J. M. Elwood, his son, located of record on May 29, 1899, the 40 acres adjoining Section 3 (Section 2—the property here involved). It appears from the evidence that it was agreed as to this 40 acres that there were to be six interests, the three original locators and Burton Elwood, Judson F. Elwood and George Wiseman. This interest of these six men was not to be considered a part of the corporation assets, and it appears that it was to be more of a joint venture or copartnership interest in that property. Oil was discovered on this 40 acres and it was leased to an oil company in 1906. Dividends or royalties were paid semiannually over a period of years by the lessee to Burton Elwood. He in turn retained his one-sixth interest therein and apportioned the remaining five-sixths interests to the respective parties above mentioned. Subsequently George Wiseman died in 1909. Burton Elwood continued to pay his one-sixth interest proportionately to his widow and heirs by checks. J. M. Elwood died in 1910. J. C. Marlar died in 1912. Jonathan Elwood died in 1915. Judson F. Elwood died in 1926, and a similar procedure was followed in respect to the payments of their one-sixth interests in and

to the royalties. Probate proceedings were had in respect to the estates of these deceased men and it does not affirmatively appear from the inventories or decrees of distribution that the particular interests of the respective parties in and to this venture were listed as assets therein. However, the decrees of distribution contain omnibus clauses which plaintiffs claim carried the estate to the respective heirs involved in this action who are seeking to quiet title to their respective interests. Burton Elwood, the lone survivor of the six original men or co-partners or joint venturers, obtained deeds or conveyances from the survivors and their respective heirs about the year 1921, for the purpose of placing title to the 40 acres in him as one individual for the apparent and claimed reason that it was to facilitate the application for and securing of the government patent rights to the entire 40 acres to protect the lease-holders. It appears that after the patent was obtained in the name of Burton Elwood, individually, in 1924, both he and his wife Commilia Elwood signed and acknowledged deeds to five-sixths of the 40-acre interests to the respective heirs here involved or their ancestors, apportioned according to their respective interests which were determined by Burton Elwood. All of these deeds remained undelivered except one which was delivered to Flora Marlar, and it was recorded on June 8, 1925. However, with the exception of Mrs. Marlar, Burton Elwood continued to make semiannual royalty payments to the respective parties according to the interests determined by him.

Without the knowledge or consent of these parties, on May 1, 1931, Burton Elwood signed and acknowledged a deed of gift purporting to convey to his wife Commilia Elwood the whole of said 40-acre tract. This deed was not recorded but was placed in a depositary accessible to both parties. On March 11, 1949, Burton Elwood died, and his wife imme-diately recorded the deed on March 12, 1949, claimed full ownership of the entire property, and refused to pay further dividends to the parties here in interest. On May 14, 1952, they subsequently brought this action against her. During the trial Commilia died and the executor of her estate and her two children, Andrew Elwood and Irma Mazzei were made party defendants.

A considerable number of exhibits were received in evi-dence and volumes of evidence were taken in an endeavor to establish the claimed trust. Thereafter, the court found gen-erally in favor of the plaintiffs and against the appellant. Due to the death of all of the original joint venturers or co-partners, there was very little evidence of the nature of the

original agreement between them. This is also true in respect to the claim that the conveyances to Burton Elwood were given only for the purpose of perfecting the patent title. Appellant contends that the original agreement was that three of the number would file the location on the 40-acre tract and that subsequently the three others named were to have a one-sixth interest therein; that it was agreed the royalties therefrom would be paid one-sixth to each partner or his heirs as long as any one partner remained alive, and then the property, in its entirety, would belong to the surviving partner. The plaintiffs agreed that a one-sixth interest originally belonged to the respective parties but contend that there was no agreement between them about the surviving partner having title to the entirety. The claim is that each partner's interest passed to his heirs upon his death and that those heirs here involved acquired title thereto and that the remaining partner, Burton Elwood only held title to their interest in trust, for their benefit, and it was the duty of Burton Elwood and his successors in interest to return the proportionate shares of their interest therein under the trust.

A letter was written on May 11, 1935, by Burton Elwood to plaintiff Katherine M. Atwood, one of the heirs and distributees of the oil royalties, and granddaughter of Jonathan Elwood, deceased, one of the original locators. This was a reply to a request of hers as to what interest she had in the oil property and royalties, and the manner in which the property was acquired. He wrote:

"Dear little Katie and Family:

"I just received your letter dated May 10th. The money I am sending you twice a year is from our Section Two oil property which consists of 40 acres joining the Kings River Oil property. This property was taken up by Father Roe (Jonathan Elwood) and Wiseman and John Marlar and never was incorporated. We verbally agreed to give your Dad (Judson Elwood) a 1/6 interest in it. After the death of all the locators I had to go on and get a patent to it to protect our leaseholders. This property was not appraised in Jud's estate as his name was never on record with it. It is leased and always has been to the same company that has the Kings River lease but the checks come direct to me and I devide it to the heirs twice a year. Your part this time was 25-66/100. . . .

"Ever, Uncle Bert."

As will be seen, there is nothing in this letter indicating any agreement between the partners that the survivor should become the absolute owner of all of the 40-acre tract. In fact, it fully supports plaintiffs' contention. The fact that Burton Elwood and his wife subsequently signed deeds to the respective heirs according to their proportionate shares and continued to pay oil royalties during all of this time destroys appellant's argument about that portion of the claimed agreement.

The court specifically found that plaintiffs, supplemental plaintiffs, and the named defendants were owners entitled to possession of a specific fractional interest in said property; that the purpose of the deed of the respective heirs to "Burton Elwood was for the purpose of enabling Burton Elwood to obtain a patent to said property in the most convenient manner and Burton Elwood thereupon became a trustee of the interests of said parties and for their benefit"; that an actual controversy did exist between plaintiffs and appellant; that Burton Elwood took a certain designated interest in the property by virtue of the patent and that all other interests purporting to be vested in him by reason thereof were held in trust by him for the benefit of the other parties here concerned; that Commilia Elwood, wife of Burton Elwood, took no interest in the property under the deed of May 1, 1931, for the reason that it was not delivered to her, but that she did take a 98/504 interest in it in her own right, as heir of Burton Elwood. It then found plaintiffs were entitled to a judgment in accordance with the interests set forth in the findings, and to have their title quieted in said real property as against defendant Commilia Elwood, her heirs or executors. The court apportioned the oil royalties to plaintiffs accordingly.

The only appeal is by defendant Andrew Ellsworth Elwood, as executor of the last will and testament of Commilia Elwood, deceased. He contends: (1) That plaintiffs cannot maintain a quiet title action on the general allegations set forth in the first cause of action for the purpose of establishing that the appellant is holding the title to the property in trust for plaintiffs, because they were not, at the time of the filing of the action, the legal owners of the property; that legal title had passed to Burton Elwood free and clear of any alleged trust by the very terms of the deeds or conveyances; that these deeds, being introduced in evidence by plaintiffs, cannot be questioned by them as to their legal effect, and that the

owner of an equitable title cannot maintain an action to quiet title against the owner of the legal title, citing such cases as *Strong* v. *Strong,* 22 Cal.2d 540, 546 [140 P.2d 386] ; *Buchner* v. *Malloy,* 155 Cal. 253 [100 P. 687] ; and *Ephraim* v. *Metropolitan Trust Co.,* 28 Cal.2d 824, 836 [172 P.2d 501].

In the instant action plaintiffs do not depend in whole upon the quiet title action to obtain the desired relief. The second and third causes of action clearly set forth, in considerable detail, the evidentiary facts, together with the claim that an actual controversy exists as to the validity and purpose of the deeds executed. They included a prayer that the court declare those interests and that Burton Elwood took such interests of plaintiffs in trust for their use and benefit; that an accounting be had; and for general relief. The findings and judgment, as entered, generally follow these pleadings which are sufficient to afford the relief obtained. (*South* v. *Wishard,* 123 Cal.App.2d 642 [267 P.2d 827] ; *In re Sharp,* 17 Cal.App. 634 [120 P. 1079] ; *Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732].)

(2) Appellant argues that since there was no confidential relationship alleged as existing between the grantors, plaintiffs herein, and the grantee, at the time the deeds were executed and delivered; since no fraud or misrepresentation was claimed; since there was no showing of any oral or written agreement between them at the time indicating any trust agreement; and since the deeds were absolute on their face, plaintiffs have not established any sufficient trust agreement upon which they can recover; that acts done by the grantee after the deed was delivered do not constitute grantee a trustee; that since no written trust agreement was shown, and since the court failed to make a specific finding as to whether such agreement was oral or written, reversible error resulted, citing such cases as *Fairchild* v. *Raines,* 24 Cal.2d 818 [151 P.2d 260] ; *Sheehan* v. *Sullivan,* 126 Cal. 189, 192 [58 P. 543] ; *Knouse* v. *Shubert,* 48 Cal.App.2d 685 [121 P.2d 74] ; Civil Code, section 852; and 24 California Jurisprudence 940, section 186.

The trial court specifically found that Burton Elwood held the property "as an involuntary trustee" for the persons named, and that subsequently his wife took the property, collected the royalties, and held same as an "involuntary trustee" for sums in excess of 98/504 interest therein.

Section 2223 of the Civil Code provides that "One who wrongfully detains a thing is an involuntary trustee thereof,

for the benefit of the owner.'' ▮ A constructive trust arises from acts of one wrongfully detaining property or obtaining it by fraud, in violation of trust or other wrongful act. (*Simpson* v. *Gillis*, 1 Cal.2d 42 [32 P.2d 1071]; 43 West's Cal.Dig., p. 310, § 91.)

In *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732], it was said: ''A constructive trust which is created by operation of law need not be in writing. . . .'' And in *Bainbridge* v. *Stoner*, 16 Cal.2d 423, 428 [106 P.2d 423], it was held that ''The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. . . .'' (See also *Crabtree* v. *Potter*, 150 Cal. 710 [89 P. 971]; and *McMillen* v. *McDonald*, 127 Cal.App.2d 302 [273 P.2d 683].) Involuntary or constructive trust is not created by deed, will, or other writing, but is imposed on property by law. (*In re Harris' Estate*, 9 Cal.2d 649 [72 P.2d 873]; 43 West's Cal. Dig., p. 312, § 91.)

The evidence here discloses a close family, marriage, or blood relationship, and in addition, a relationship of actual trust and confidence over a period of many years. In *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116 [140 P.2d 31], under a somewhat similar set of circumstances, this question was adequately discussed and it was there said that under the parol evidence rule a party is prohibited from varying the terms of a written instrument by oral testimony; that an express trust, arising in parol, is unenforceable as an express trust, but since that was not an action to enforce the oral express trust, and being an action to enforce a constructive trust which was claimed to have arisen by operation of law upon the repudiation of a promise to reconvey, such an action was maintainable; that an express oral promise to reconvey is unenforceable but the repudiation of that promise should compel the grantee to restore the grantor to the status quo. It then states that it is well settled in this state that breach of an oral promise to reconvey by a transferee or his administrator when the transferee is in a confidential relationship with the transferor at the time of the transfer constitutes sufficient ''fraud'' to create a constructive trust. *Estate of Cover*, 188 Cal. 133, 143 [204 P. 583], is then cited wherein the court defines the terms ''confidential'' and ''fiduciary'' relationships as follows: ''Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person

in the integrity and fidelity of another.'' However, it is said that it is not clear from the cases whether the courts mean a confidential relationship in fact must exist or whether it must also be a relationship based on status. It concluded that the basis of the confidential relationship exception is that under section 2224 of the Civil Code the equity courts will prevent one person who is in a confidential relation with another from becoming unjustly enriched by reason of a breach of the trust, and that a confidential relation in fact should be the test. It was there said that the cases are clear that where there is some sort of a status between the grantor and the grantee and confidence is imposed, a constructive trust will be imposed upon repudiation of the oral promise to reconvey, citing many cases.

In *McMillen* v. *McDonald, supra,* it was held that an acceptance of property conveyed to grantees when they ''well knew and fully understood and recognized . . . that they were required and obligated to reconvey said real property'' carries with it at least an implied promise to reconvey where conduct of the parties as found is inconsistent with any other conclusion. ■ It is well settled that with reference to the statute of limitations, a constructive trust does not arise until the transferee repudiates an oral promise to reconvey, or dies. (*Steinberger* v. *Steinberger, supra.*) ■ In the instant case the issue of trust relationship was fully and voluntarily litigated before the trial court without objection, although it may not have been directly raised by the pleadings. Accordingly, appellant cannot complain of this fact for the first time on appeal. (*Fischer* v. *Ostby,* 127 Cal.App.2d 528 [274 P.2d 221].) From an examination of the entire record and the evidence produced we conclude that the findings are sufficient; that the evidence produced sufficiently supports them; and that they are sufficient to bring plaintiffs within the exception indicated.

(3) Appellant claims that plaintiffs had no title to the property in the first instance since inventories and decrees of distribution in the several estates in evidence were received for a limited purpose and did not specifically mention this property. It is true that some limitation was placed upon the reception of some of the decrees as to the purpose for which they were offered and received. However, they were received in evidence and the court stated they would be received for the limited purpose ''heretofore stated,'' which purpose, as we construe the record, was to show that those

certain plaintiffs involved were legatees or devisees thereunder, and ''as tending . . . to prove the descent of this property'' and to show the omnibus clause in the decrees whereby these certain plaintiffs claim title to their respective interests, even though those interests were not particularly described therein.

The trial court fully considered these decrees and the evidence in respect to plaintiffs' claimed titles. The finding that plaintiffs had such title as is indicated in the judgment herein, has sufficient evidentiary support. (*Bates* v. *Howard,* 105 Cal. 173, 183 [38 P. 715]; *Estate of Yorba,* 176 Cal. 166 [167 P. 854].)

(4) The last claim is that since the trial court held that the deed of the 40-acre tract on May 1, 1931, from Burton Elwood to his wife was of no force and effect because of nondelivery, title still remained in Burton Elwood or his estate, and accordingly the decree here entered against the executor of Commilia Elwood's estate had no force and effect to quiet title to that property. The action was originally instituted against Commilia Elwood prior to her death. She was the one claiming title to the property, either by the deed or inheritance from her husband, in whose name title previously stood. The court found she was entitled to a 98/504 interest in the property as an heir of Burton Elwood, and also found that when he took the interest of plaintiffs in said property he took it impressed with a constructive trust for the benefit of the rightful owners. ■ When Commilia Elwood took it, either by deed or as heir, she took it impressed with the same trust. (*Steiner* v. *Amsel,* 18 Cal.2d 48, 54 [112 P.2d 635].) Accordingly, the decree here entered is effective insofar as her title and interest in and to the trust property is concerned. (*Estate of Yorba,* 176 Cal. 166 [167 P. 854].) ■ Heirs occupy the place of their ancestors. She held the property inherited from her husband precisely as he held it, subject to the same conditions and equities. (*Carlson* v. *Carlson,* 124 Cal.App. 207 [12 P.2d 165]; 9 Cal.Jur. 472, § 20.) There is no showing that there were any other heirs than Commilia Elwood. This sufficiently disposes of the questions raised on appeal.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 25, 1955, and appellant's petition for a hearing by the Supreme Court was denied June 29, 1955.