[Civ. No. 16646.   First Dist., Div. One.   July 2, 1956.]

IDA UNGER, Respondent, v. RAY C. CAMPAU et al., Appellants.

James D. Lucey for Appellants.

Charles P. Molinari and Joseph L. Casalnuovo for Respondent.

AGEE, J. pro tem.*—On June 16, 1953, plaintiff purchased from defendants, husband and wife, a parcel of real property known as 55, 55A and 55B Brosnan Street, San Francisco, together with certain furniture, for $11,794. On September 3, 1953, plaintiff filed this action against defendants for damages for false representations alleged to have been made by defendant Campau which induced plaintiff to purchase. The trial court, sitting without a jury, rendered judgment in plaintiff's favor for $3,398.04. This appeal therefrom by defendants followed. Mrs. Campau did not participate in the negotiations and Campau is the defendant hereinafter referred to as "appellant."

Respondent alleged in her complaint, and the trial court found, that, for the purpose of inducing respondent to purchase and with the intent to deceive and defraud her, appellant falsely and fraudulently represented to her that the property consisted of three separate residential units which could be rented as such, and that the plumbing and electricity had been installed according to the applicable laws and were in good condition and repair; that these representations were false in that all of the plumbing, electrical and construc-

*Assigned by Chairman of Judicial Council.

tion work had been done in an illegal manner and without inspection or permits as required by law, the ground floor unit known as the garden apartment could not be legally used or rented as a residential unit, and said plumbing and electricity were not installed in a good and workmanlike manner; that appellant knew that these representations were false but withheld such knowledge from respondent; that respondent believed such representations to be true and relied thereon; that, but for said representations, respondent would not have purchased the property.

Appellants contend that the evidence is insufficient to support these findings. First, they say that respondent had had previous experience in business and real estate transactions, that she lived next door to the property and had watched appellant as he was doing the remodeling work, and that she had consulted with her own real estate broker before the sale. Therefore, appellants contend, respondent did not rely upon and was not induced by any representations made by them. This contention is without merit. There is no showing that respondent had any technical knowledge which would have enabled her to make an inspection of the property which would have revealed the structural, electrical and plumbing defects. (See *Milmoe* v. *Dixon*, 101 Cal.App.2d 257, 260 [225 P.2d 273].) Appellant had listed the property as having three separate rental units. Respondent went over the listing before buying, relied upon it and believed it to be true. When she told appellant that she wanted the property for income purposes, he replied: ''It will be very easy.'' She also testified that she would not have bought the property had she not believed it to have three rentable units. There is no quarrel between the parties as to the applicable rule of law. ■ There must be both reliance by the buyer upon the seller's fraudulent misrepresentations and justification for such reliance. The question of reliance and justification in this case is one of fact, not of law, and the evidence is amply sufficient to support the trial court's finding thereon. In their closing brief, appellants complain that a finding was not made as to this special defense ''by way of estoppel,'' i.e., that respondent lived next door to the property, had watched the construction, and relied upon her own knowledge and independent advice. This issue was fully covered when the trial court, after finding that the false representations were made, further found: ''. . . that it is true that the plaintiff did not know the falsity of the representations made by the

defendants but, to the contrary, believed that the representations so made by the defendants to the plaintiff were true and that plaintiff relied solely upon the statements and representations of said defendants, and but for such representations would not have purchased said property as aforesaid.''

Appellants complain that the trial court improperly restricted the cross-examination of respondent as to her previous business experiences. The trial court did allow questions as to the general nature of each of these transactions but stopped the questioning when it went beyond reasonable bounds. The only legitimate purpose of such questioning was to establish the respondent's general knowledge and previous experience in the buying and selling of real estate. The trial court did not abuse its discretion in limiting the cross-examination to this.

Appellants next contend that they did not make any misrepresentations. When appellant went to his broker he related to him the information from which the listing was then prepared. The property was described therein as being ''completely remodeled'' and consisting of two four-room flats and one two-room garden apartment, each with separate electric and gas meters. After the sale had been consummated, respondent discovered that appellant had constructed the garden apartment in an illegal manner and without any permit. It could not lawfully be used or rented as a residential unit. The major defect was that the space between the floor and the ceiling was from nine inches to 13 inches less than the minimum allowed by law. The original electric wiring had been extended illegally and without a permit or inspection. There were no electric or gas meters for the garden apartment. The plumbing work was done without a permit and did not meet the legal requirements. There were numerous other defects. Appellant's representations in the listing that the property consisted of three rentable residential units was clearly false. His statement to respondent that the property could easily be rented was likewise false. The garden apartment could not even be legally rented at all for living purposes.

Next, however, appellants claim that any misrepresentations if made, were not made with *intent* to deceive. This question turns mainly upon whether appellant knew that he was required to obtain permits for the ''remodeling.'' (He admittedly did not disclose his failure to do so.) In *Milmoe* v. *Dixon, supra,* at pages 259-261, the court said:

"It was also found that while the defendants had made no affirmative misrepresentations, they had concealed the fact that no building permit had been obtained and that such concealment was for the purpose of inducing respondents to enter into the agreement of purchase and that respondents would not have made the purchase if they had known the facts so concealed. . . . Certainly respondents were privileged to assume that appellants had complied with the law in securing building permits, if any were required, and in conforming with the building codes. . . . The trial court correctly concluded that this was not a privileged concealment and the failure to disclose it constituted fraud." There was ample testimony in the instant case from appellant himself that justified the trial court in finding that he knew of the necessity of obtaining permits for the remodeling work which he did on the property. Appellant had worked as a hod carrier, bricklayer and plasterer. He had obtained a permit before when doing work on other property owned by him. He said he thought labor and material had to cost $200 or more before a permit was needed. His description of the work done by him would certainly run well over this amount. Respondent had watched him do much of the work and knew that his regular occupation was in the construction field. She had a right to assume that the work was being done properly and under the required permits.

Appellants rely heavily upon *Watt* v. *Patterson,* 125 Cal. App.2d 788 [271 P.2d 200]. There, the property was being operated by the defendant-seller as a rooming house, in violation of a single-family zoning restriction. She did not know this and made absolutely no representation concerning the legality of such use. All of the facts known to defendant which concerned the property were imparted to the plaintiff-buyers. The court discussed the cases of *Barder* v. *McClung,* 93 Cal.App.2d 692 [209 P.2d 808], and *Milmoe* v. *Dixon, supra,* and held that they did not apply because in each of those cases the vendor concealed knowledge which he had and should have imparted to the vendee. By plain implication Justice Wood (Fred B.), who wrote the opinion, approved the Barder and Milmoe cases, when he said, after discussing them: "That concealment of structural defects and of lack of governmental building permits, inspection and approval, is actionable, furnishes no precedent for holding the defendant's conduct actionable in the instant case." (P. 795.)

Appellant claims he did not do the plumbing and electrical work. However, the various inspectors who testified stated that the work appeared to be of recent origin and appellant admitted that he had installed a sink, toilet, and some electrical plugs. He had had the property since September 2, 1950, and it is fair to conclude that the work was done by him or someone under his direction. There was certainly sufficient evidence to sustain the trial court's finding in this respect.

The amount of damages awarded was $3,398.04. This was computed by adding to the sale price, $11,794, the cost to respondent of the electrical and plumbing work, $854.04, done to comply with the law, and deducting therefrom the value of the real property as of the date of sale, $9,250. Appellants contend that, at most, they are liable only for the difference between the price for which they sold the property and its reasonable value as of the time of sale; therefore, appellants continue, the inclusion of the $854.04 item in the award is a duplication of damages. The only witness on valuation was a real estate broker produced by respondent. All of his inspections of the property were made in January, 1954, by which time the electrical and plumbing work had been installed. The discussion in the record which preceded the giving of his opinion clearly shows that his valuation was based upon the value of the real property at the time of sale, June 16, 1953, assuming it was in the *condition* as he saw it in January, 1954. The question and answer as to his valuation are as follows: "Q. What would be the reasonable market value of that property *as you inspected it* as of June 16, 1953? ... A. $9,250." (Emphasis added.) Thus, the property having increased in value by the amount of plumbing and electrical work done after the sale but before the inspection, such increase in value was necessarily included in the appraisal because the appraiser was assuming its condition to be the same at the time of sale as it was at the time of his inspection. The appraiser's testimony covers less than eight pages of the transcript, three of which relate to his qualifications. He then described the premises in detail, using notes made by him during his inspection in January, 1954. There was no cross-examination except to ask him if he had ever before made an appraisal for respondent, to which he replied in the negative. The trial court obviously reasoned that appellants got the benefit of an increased valuation because of the improvements and that, had such improvements not been made, the valuation as

given would have been reduced to the extent of the cost thereof.

■ However, it is clear that the appraisal of the expert witness was of the real property alone and did not include the personal property included and described in the Agreement of Sale as "All Furniture and Furnishing as per Inventory." There does not appear in the record any valuation of this property. Whatever the amount may be, appellants are entitled to have this deducted from the amount of damages awarded. ■ The burden of proof as to the extent of damages was upon respondent. ■ She bought both real and personal property. The sale price was not segregated. Respondent proved the value of the real property but not that of the personal property. This will have to be determined and deducted from the award of damages.

The judgment is reversed for the sole purpose of having the trial court determine the value of the personal property, which amount, when determined, shall be deducted from the judgment. In all other respects the judgment is affirmed. Each side to bear his or her costs on appeal.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied August 1, 1956.