SHOEMAKER, J.
 

 This is an appeal by defendants Paul M. Ciria, Paul T. Ciria, and Virginia Shank, from a judgment awarding damages for fraud in the sale of real property.
 

 In July 1950, Paul M. Ciria and his wife, Rachel, were the owners of a bungalow containing two units, one a five-room first floor residence, the other a four-room basement apartment. On July 11, they sold this house and certain furnishings therein, to plaintiffs for $15,000, $12,250 of which was represented by a note secured by a deed of trust on the premises and payable in installments of $100 per month.
 

 In March 1958, the San Francisco Department of Health notified plaintiffs that the basement apartment had been illegally constructed and could not be rented for living purposes, whereupon this action for damages upon the ground of fraud in the sale was commenced.
 

 Rachel Ciria had died on August 21, 1957, and the children of the marriage, Paul T. Ciria and Virginia Shank, succeeded by inheritance to her one-half interest in the note and deed of trust. Plaintiffs sought damages against the father and children defendants and that the damages be set off against the amount of the note which, under plaintiffs ’ theory, defendants held as constructive trustees for the benefit of plaintiffs.
 

 After a court trial, judgment was rendered in favor of plaintiffs in the amount of $3,900, and the defendants were declared constructive trustees for the purpose of reducing the amount due on the note by said amount.
 

 Appellants first contend that there is no evidence whatever that any of them were guilty of actionable fraud. As to appellants Paul T. Ciria and Virginia Shank, this contention is sound, since these appellants had no part in the transactions leading up to the sale. Their liability was predicated solely upon the ground that they were subsequent holders, through inheritance, of the note and deed of trust allegedly procured through the fraud of their parents. No personal liability was
 
 *4
 
 imposed upon them in excess of their interests under the note.
 

 The evidence reveals that Paul M. Ciria’s occupation was that of maintenance man. He and his wife purchased their house in 1937, which was a single-family residence. In 1944, Paul M. Ciria hired a carpenter to build a downstairs room. He assisted with installing the sheet rock therein. The room was completed and then Rachel Ciria hired a contractor to build an adjoining kitchen, bathroom and living room. Mr. Ciria assisted with this work by moving a washtub and connecting it. By 1945, the basement apartment was completed and shortly thereafter the Cirias began renting the apartment.
 

 In response to questions as to whether he had ever applied for permits in connection with the construction work, Mr. Ciria testified that he had not, that he had hired contractors to take care of everything, and that he did not know whether the builders had gotten permits or not. When asked whether he knew that permits were required in order to do building, he stated that he did not know that this was necessary just to build a room downstairs, and that he did not think it was his business because the contractors had been hired to take care of all the necessary arrangements. He did state, however, that when he bought the house in 1937, he found a building permit and a notice of .occupancy and completion in the basement. He also testified that he knew a permit had been obtained in connection with the installation of a heating system because he had seen the inspector come and examine the heater.
 

 As to the representations which the Cirias made to respondents, there was evidence that the property had been listed for sale as a multiple dwelling. Mrs. Birch testified that the sellers’ agent, Mr. Vagin, told her that the house contained a furnished four-room basement apartment, that there was a tenant paying $65 per month as rent, and that $65 was the authorized OPA price. She stated that Mrs. Ciria had shown her the CPA registration for the apartment and that Mr. Vagin had told her that it would not be bard to pay off the purchase price with the $65 income she would receive from' the rent. Mrs. Birch also testified that she purchased the property under the belief that she could continue to rent the apartment, and that she did in fact continue to rent it until March 10, 1958.
 

 . We are faced primarily with the question as to whether or
 
 *5
 
 not this evidence constitutes a sufficient showing of actionable fraud on the part of Paul and Rachel Ciria. Appellants contend that it cannot and cite
 
 Watt
 
 v.
 
 Patterson
 
 (1954) 125 Cal.App.2d 788 [271 P.2d 200], as authority for their position. In the
 
 Watt
 
 case, the defendant owned a house containing a front apartment of six rooms, a rear apartment of four rooms, and a garage which had been converted into a bedroom. She rented the rear apartment, the garage-bedroom, and two of the rooms in the front apartment to various tenants, and had obtained OPA rental ceilings for the rear apartment and the rooms in the front apartment which she rented. In October 1947, the defendant listed the property for sale as income property and sold it to plaintiffs, who subsequently learned that a municipal ordinance restricted the house to use as a single-family residence. Plaintiffs then brought suit against the defendant, seeking damages for her allegedly fraudulent misrepresentations. The trial court found for the defendant, and the judgment was affirmed on appeal. While it is true that in the
 
 Watt
 
 case the court held that there was no showing of actionable fraud in the sale of the property as rental property even though the zoning ordinance prohibited the same, the ease turned upon the finding of the trial court that there was a lack of
 
 scienter
 
 on the part of the seller, the appellate court pointing out that the defendant was totally unaware of the zoning ordinance and had never represented the property to be legally rentable. Under such circumstances, the appellate court concluded that there was no proof of
 
 scienter,
 
 hence no resultant liability on the part of the seller.
 

 The Cirias strongly urge that they never expressly represented to respondents that the basement apartment was legally rentable or that they were aware of the need for building permits, even as the defendant in the
 
 Watt
 
 case. Respondents, on the other hand, assert that the Cirias were at least guilty of impliedly representing that the apartment was built in accord with the applicable regulations and could legally be rented. Respondents also urge that there was sufficient evidence that the Cirias did know of the requirement that building permits be obtained before commencing such construction. We agree with respondents.
 

 The principles that control in our case are set forth in
 
 Unger
 
 v.
 
 Campau
 
 (1956) 142 Cal.App.2d 722 [298 P.2d 891], wherein the defendants sold the plaintiff a dwelling which they had listed as having three separate rental units and
 
 *6
 
 which they had told the plaintiff could easily be used for income purposes. In actuality, one of the rental units had been constructed in an illegal manner and without inspection permits, and could not be legally rented. The court upheld the trial court’s finding that the manner in which the property had been listed and the defendants’ statement that it could easily be rented constituted misrepresentations upon which the plaintiff was justified in relying. As to the question of whether the defendants knew that they were required to obtain permits, the court noted that there was evidence that one of the defendants had worked as a hod carrier, bricklayer and plasterer, and that he had previously obtained a permit in connection with other work performed by him. He had also testified that he knew a permit was necessary for work costing $200 or more. The court thus concluded that the question of knowledge was one of fact and that there was ample evidence to support the trial court’s finding of actual knowledge.
 

 In the case at bar, the representations made by the Cirias and their agent, Mr. Vagin, were almost identical to those made in the
 
 Unger
 
 case. Granting there was evidence on both sides of the matter, the conflict in the evidence was for the trier of facts. Hence, it cannot be said as a matter of law that the lower court erred in finding that the Cirias knew of the need for permits.
 

 Appellants next contend that the trial court was without power to hold Paul T. Ciria and Virginia Shank liable as constructive trustees of the note and deed of trust in the absence of any showing that these defendants participated in or had knowledge of the fraud of their parents. Appellants further contend that respondents’ failure to file a claim in the estate of Rachel Ciria precluded them from offsetting their damages against the interests of Paul T. Ciria and Virginia Shank. Neither of these arguments is meritorious.
 

 While the trial court correctly found that Paul T. Ciria and Virginia Shank “did not have any part in any transaction leading up to the sale of said real property to plaintiffs,” it does not follow, however, that the court erred in holding these defendants liable as constructive trustees of their interests in the note and deed of trust executed by respondents. Civil Code, section 2224, provides that “One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have
 
 *7
 
 had it.” Civil Code, section 2243, provides that ‘‘Every one [sic] to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration.”
 

 Here, the court found that Paul and Rachel Ciria fraudulently induced respondents to purchase their property at a price which was $3,900 in excess of its true value. Under the rule set forth by Civil Code, section 2224, Paul and Rachel Ciria became involuntary trustees of the obligation evidenced by the promissory note, to the extent that it exceeded the fair value of the property. Respondents were successful in tracing interests in the note and deed of trust into the hands of Paul T. Ciria and Virginia Shank. The rule of Civil Code, section 2243, applies. These appellants did not pay a valuable consideration for their interests; they took by inheritance from their mother, Rachel Ciria; under such circumstances, they became involuntary trustees of the $3,900 by which the note exceeded the fair value of the real property conveyed to respondents. Although appellants assert that they received their interests in good faith, it must be noted that Civil Code, section 2243, requires both good faith
 
 and
 
 the payment of valuable consideration. The courts have held that if property is impressed with a trust during a decedent’s lifetime, his heirs hold it subject to the same conditions and equities.
 
 (Atwood
 
 v.
 
 Elwood
 
 (1955) 132 Cal.App.2d 761, 770 [283 P.2d 43].) It has similarly been held that it can make no difference, in the absence of a valuable consideration, that the successor in interest of an involuntary trustee takes in good faith.
 
 (Pacific Nat. Bank
 
 v.
 
 Corona Nat. Bank
 
 (1931) 113 Cal.App. 366, 370 [298 P. 144].)
 

 This same approach also defeats appellants’ argument that respondents’ failure to file a creditor’s claim in the estate of Rachel Ciria barred them from seeking relief against Paul T. Ciria and Virginia Shank. Appellants contend that respondents discovered the fraud on March 10, 1958, and that the time for filing claims in Rachel Ciria’s estate did not expire until May 1, 1958. Appellants further assert that Probate Code, section 707, requires the timely filing of all claims arising upon contract and all claims for damages for injury to property. Although it is doubtless true that monetary damages resulting from fraud and deceit constitute an ‘‘injury to property” within the meaning of the statute (see
 
 Agnew
 
 v.
 
 Parks
 
 (1958) 164 Cal.App.2d 837, 840-841 [331
 
 *8
 
 P.2d 184]), appellants overlook the fact that section 707 is inapplicable to specific property which the decedent holds subject to a trust at the time of his death. In
 
 Estate of Datard
 
 (1905) 147 Cal. 253, 256 [81 P. 519], the court stated: “It is well settled that one who claims as his own, adversely- to an estate, specific property held and claimed by the estate, cannot be called a creditor of the estate within the meaning of the probate law. The decisions are clear and conclusive upon the proposition that where one seeks to recover from the representatives of an estate specific property alleged to have been held in trust by the decedent at the time of his death, he is not seeking payment of a claim from the assets of the estate, is not required to present a claim as a creditor, and is not a ' creditor of the estate. ’ His action is not founded upon a claim or demand against the estate.” (Also see
 
 Brunson
 
 v.
 
 Babb
 
 (1956) 145 Cal.App.2d 214, 227-228 [302 P.2d 647].)
 

 Appellants’ final contention is that the court erred in refusing to apply the rentals received by respondents in mitigation of the damage caused by appellants’ fraud. Appellants assert that respondents received rentals from the illegal apartment for eight years after their purchase. They rely upon
 
 Garrett
 
 v.
 
 Perry
 
 (1959) 53 Cal.2d 178 [346 P.2d 758], as authority for the proposition that events occurring subsequent to a fraudulent sale may be considered by the court in arriving at the amount of damages to which the buyer is entitled, and conclude therefrom that the amounts which respondents received as rent should have been allowed in mitigation. This contention may not be upheld. The
 
 Garrett
 
 case was based upon the express wording of Civil Code, section 3343, which provides that the measure of damages for the fraudulent sale of property shall be the difference between the actual value of the property and the actual value of the consideration with which the buyer
 
 parted,
 
 together with any additional damage arising from the particular transaction. In the instant ease, appellants do not assert that respondents parted with less than the agreed purchase price or that the promissory note which they executed has been cancelled or is no longer a valid and subsisting obligation.
 

 In the case of
 
 Sixta
 
 v.
 
 Ochsner
 
 (1960) 187 Cal.App.2d 485 [9 Cal.Rptr. 617], at pages 491-494, we had before us a similar problem, and we there announced the rule applicable, namely, that in an action at law for fraud, which this action is, that “While the application of the out-of-pocket damage
 
 *9
 
 rule, viz., section 3343 of the Civil Code, seems harsh in the instant ease, it must be borne in mind that these rules are established to protect innocent victims of either direct or. implied fraud. If this were an action to rescind, as previously-noted, this court would be empowered in equity to make proper adjustments. However, since it is grounded to the affirmance of the contract, our hands are tied, even though the victim of this fraud might thereby appear to be unjustly enriched. ’ ’ (P. 494.)
 

 The trial court was correct in concluding that the rentals actually received by respondents had no bearing on the measure of damages. In view of our determination, we need not consider appellants ’ contention that the court erred in refusing to order respondents to refresh their recollection of their rental income by consulting their income tax returns.
 

 Judgment affirmed.
 

 Kaufman, P. J., and Agee, J., concurred.